## BYNE vs. HATCHER.

1. The verdict in this case was not only authorized, but was demanded, by the evidence.

2. A principal is bound by the acts of his agent within the scope of his authority. The form in which the agent acts is quite immaterial ; if the principal's name is disclosed, and the agent professes to act for him, it will be held to be the act of the principal; the agent's authority will be construed to include all necessary and usual means for effectually executing it; and private instructions not known to persons dealing with a general agent cannot affect them.

3. While a principal is not, as a general rule, liable for the wilful trespass of his agent, yet, if the trespass be committed by the principal's command, or if it is assented to by him, he is liable. Such assent or ratification may be implied from the conduct of the principal; and he cannot ratify the act of his agent in part, and repudiate it in part.

November 3, 1885.

v 75-19

Principal and Agent. Torts. Conversion. Trespass. Before B. P. Hollis, Esq., Judge *pro hac vice.* Lee Superior Court. April Term, 1885.

Reported in the decision.

C. B. Wooten; D. A. Vason, for plaintiff in error.

E. G. Simmons; B. B. Hinton; J. F. Watson; J. Dodson, for defendant.

Hall, Justice.

This was an action to recover four bales of cotton alleged to belong to the plaintiff, Hatcher, and to have been wrongfully converted by the defendant, Byne.

It is not denied that Hatcher was the owner of the cotton, and that it had been wrongfully converted by one Smith, who acted as Byne's clerk and general agent in the sale of goods and the collection of debts made at his store. Sam. Brantly, a tenant of Hatcher's, made the cotton in question on the plantation of his landlord, and when it was matured and gathered, delivered it to him in payment of rent and supplies furnished. The same year Brantly contracted a debt at Byne's store, amounting to seventy-two dollars. Whether this debt was made with Smith, the agent and clerk, or with Byne, was left in doubt. They both swore, on the trial, that the transaction was entirely with Smith. Byne's books showed, however, that Brantly was charged as his debtor for the articles furnished. That there was some secret arrangment between Smith and Byne as to this particular transaction is unquestionable, and, notwithstanding Byne's denial that he either had anything to do with making this account, or that he authorized the seizure and sale of Hatcher's cotton in payment of this debt, and that he ever had possession of the cotton thus converted, yet these facts, as sworn to by himself and his other witnesses, as well as shown by the books and

papers in evidence, are evident from the record. He testi-
fied that in the spring of 1879, he directed Smith not to
have any dealings or trade at his store with the people on
Hatcher's place, but upon Smith's agreeing to become per-
sonally responsible for Sam. Brantly's account, he con-
sented, upon that condition, to dealing with Sam. After
this cotton had been in Hatcher's possession some six
weeks or two months, Smith, Byne's clerk and agent, on
the 9th day of February, 1880, procured Brantly to exe-
cute to Byne a mortgage on the same, and as such agent,
he foreclosed the mortgage on the 17th day of February,
and caused execution to issue on the foreclosure, which, on
the 19th day of that month, was levied and the cotton seized
by the sheriff. On the 25th day of February, Powell, the
overseer on the plantation, and acting as agent for Hatcher,
made out and had executed for Hatcher a claim to the
property, which, however, he never delivered to the levy-
ing officer, in consequence of an arrangement made be-
tween him and Smith (which he had no authority to make,
and which was wholly unknown to and unsanctioned by
Hatcher), whereby the cotton was turned over to Smith
to be carried to market and sold. It was carried away in
Byne's wagon and by his team, which it was shown was
hired by Smith for the purpose; it was sold by Smith, and
the proceeds, amounting to some $176.00, were paid to him,
who, after paying an account due from Brantly to Ham-
lin Cook, amounting to some $40.00, took the balance on
hand and turned it into Byne's till. The transaction was
entered on Byne's books; the hire of the wagon and team,
together with Brantly's account, was paid out of this fund.
When these demands were thus satisfied, the remainder of
the amount was held in hand for sometime, to be paid
over to Powell, but he, not calling for it, as it seems to
have been expected he would do, it was turned over to
Brantly, the mortgagor. One other material fact appears
from this record. It seems, from the sheriff's entry on the
*fi. fa.*, that Byne, on the 9th day of March, paid him the

cost of the foreclosure proceedings. These facts are indis-putable, and are wholly independent of any oral evidence offered by the plaintiff, which corroborates and strengthens them. The trial resulted in a verdict for the plaintiff, which defendant sought to set aside and to have a new trial awarded him, not only upon the general ground that it was contrary to law and evidence, but upon divers alleged specifications of error in the charge of the court.

This motion was overruled, and a writ of error was brought to this court, to have the judgment reviewed and reversed.

1. The verdict in this case was not only authorized, but demanded, by the evidence and the law. The only defence seriously insisted on at the hearing in this court was, that the defendant did not convert the property in dispute, and that he had no agency in so doing; that it was converted by Smith, who was not his agent in the transaction, but acted on his own responsibility, without his aid and contrary to his wishes and consent. We do not think either branch of this defence tenable; it is scarcely specious. The defendant gave his consent to these dealings with Brantly upon conditions which he approved; he got most of the proceeds of this cotton, which was carried off by his wagon and team, and sold; the instruments by which he obtained possession of it were executed and prosecuted to judgment in his name. It is true the mortgage was foreclosed by his agent, but it is equally true that he paid the cost of the proceeding; the jury, we think, from all these facts, were bound to conclude that he actively participated in the conversion of the property, and that the plaintiff was deprived of it by his direct and personal participation in this high-handed and flagrant, if not fraudulent, invasion and disregard of his rights.

2. But, whether this is clear or not, Smith acted as his agent throughout the entire transaction, and he acted in the scope of his authority. He was his general agent to collect his accounts and to sell his goods. If there was

anything peculiar or exceptional in the affair, it was the result of a private and secret understanding between them, by which third parties, ignorant of the facts, could not be affected. That the principal is bound by the acts of his agent within the scope of his authority is well established. Code, §2194. The form in which the agent acts is quite immaterial; if the principal's name is disclosed, and the agent professes to act for him, it will be held to be the act of the principal. *Id.*, §2195. The agent's authority will be construed to include all necessary and usual means for effectually executing it, and private instructions or limitations, not known to persons dealing with a general agent, cannot affect them. *Id.*, §2196.

3. It is quite true that the principal is not, as a general rule, liable for the wilful trespass of his agent, but it is equally true that if the trespass is committed by his command, or if it is assented by him, he is liable. *Id.*, §2203. That the defendant's consent to this wrong of his agent may be implied from his aiding and abetting him, is self-evident; and even if the agent had exceeded his authority, his act was capable of ratification by his principal, which may be express or implied from the acts or silence of the principal, and when once made it cannot be revoked. It relates back to the act ratified and takes effect as if originally authorized. *Id.*, §2192. Neither can a part of the act be ratified and a part be repudiated; the whole must be adopted or none. *Id.*, §2194. The various acts of the defendant, which amount to a ratification of Smith's conduct, have been stated, and are of a character so unequivocal that they need not be repeated. These principles are clearly and distinctly set forth in the able and admirable charge of the judge *pro hac vice* (Benjamin P. Hollis, Esq.), who presided on the trial of this case. Every phase of the case is covered by it, especially every aspect of the defence; it embraces all the requests made by him which should have been given, and leaves him no ground of complaint. His entire case has been put before the jury as

fairly and favorably as the law required. Another hearing, if given him, could not result in a different or more favorable finding.

Judgment affirmed.