### 15461.  STRACHAN SHIPPING COMPANY *v.* HAZLIP-HOOD COTTON COMPANY.

1. A contract signed by one who adds after his signature the word "agent" is not necessarily his individual undertaking. The contrary would be the case if the contract showed on its face that it was in fact made in behalf of another, whose identity was disclosed by the instrument, or if, in a suit based thereon and sounding in tort or in contract, it should be made to appear that the intention of the parties was that thereby the signer as agent was binding a disclosed principal to the obligations of the contract. Where agency for a disclosed principal is thus made to appear, the right of action is confined to the parties and privies to the contract, according to its true intendment; and in that event there can be no recovery against the agent thus acting for a disclosed principal.

2. Even though, under the evidence, it might be assumed that the defendant purported to act for itself as principal in making the contract of affreightment, the plaintiff can not, in a suit for damages in tort on account of negligence in the performance of the defendant's duties arising out of the contract, recover the full market value of the goods in good order at the time and place set for delivery under the contract of affreightment, unless it be shown that the goods were received in good order by the carrier. This not being shown, the verdict for the plaintiff was not authorized by the evidence. The fact that a prior bill of lading, issued by a railway company, under which the goods

---

Contracts, 13 C. J. p. 701, n. 63.

Evidence, 22 C. J. p. 199, n. 36.

Shipping, 36 Cyc. p. 206, n. 30; p. 265, n. 33; p. 278, n. 36.

Torts, 38 Cyc. p. 433, n. 59.

Trial, 38 Cyc. p. 1632, n. 6; p. 1711, n. 19; p. 1717, n. 24.

Agency, 2 C. J. p. 670, n. 13; p. 671, n. 14; p. 674, n. 42; p. 675, n. 46.

Parties, 30 Cyc. p. 30, n. 78.

Shipping, 36 Cyc. p. 276, n. 9 New.

were to be carried to the port of shipment, contained a recital that the goods were in good order would have no probative value against the defendant, since the defendant was not a connecting carrier under that contract, and the only obligation it assumed was by an independent agreement.

3. Again, assuming that under the evidence the defendant might have made the affreightment contract as principal, and assuming (but not deciding) that under the plaintiff's evidence the plaintiff had parted with the title to the property at the time the affreightment contract was entered upon, it must be held that in an action for tort, based on negligence in performance of the duties imposed by the contract, the maker of the contract has the right to complain of negligence in the performance of the duties imposed by the contract, rather than some other person, not a party to the contract; and this is true because proof that the plaintiff had parted with his title at the time the contract was made would not establish agency on the part of the plaintiff in the making of the contract. See *Carter* v. *Southern Ry. Co.*, 111 *Ga.* 38 (36 S. E. 308, 50 L. R. A. 354); Civil Code (1910), § 4408; 30 Cyc. 30 (78).

4. The remaining grounds of exception, relating to the exclusion or admission of evidence, the failure to charge as requested, and the charge as given, are all dealt with in the opinion, on the assumption that the defendant might, under the evidence, have contracted as a principal.

DECIDED FEBRUARY 19, 1926.

Action for damages; from Chatham superior court—Judge Meldrim. February 25, 1924.

Hazlip-Hood Cotton Company, cotton merchants, brought suit against Strachan Shipping Company, in the superior court of Chatham county, to recover the value of six bales of cotton which it alleged the defendant had received at Brunswick, Georgia, in the year 1919, to be exported to Liverpool, England, but which, "by and through the carelessness and negligence of its [the defendant's] agents and servants, was lost." It was alleged also that, "by reason of defendant's negligence," the plaintiff was damaged in the sum sued for, and that the defendant "negligently injured and damaged" the plaintiff in that sum, besides interest. By amendment the plaintiff struck from the petition the allegation that the cotton was lost, and inserted the following: "Since the filing of this suit petitioner has discovered that the defendant wrongfully, negligently, and in violation of the duty and obligation owing by it to petitioner, on a day and date unknown to petitioner, but subsequent to June 1st, 1920, shipped said six bales of cotton to Savannah, Georgia, and there sold the same and delivered the proceeds of the sale to the United States railroad adminis-

tration, director general of railroads, without any authority from petitioner so to do, and thereby converted said cotton to its (defendant's) own use." To the allowance of this amendment the defendant filed exceptions pendente lite. The defendant demurred to the petition, on the grounds, that it did not set forth a copy of or the substance of the bill of lading involved in the case, and that it did not set forth the written contract of the defendant and did not give its terms. The demurrer was overruled, and there was no exception to this ruling. The defendant in its answer made a general denial of liability. The trial of the case resulted in a verdict for the plaintiff for $854.80, the amount sued for. The defendant's motion for a new trial was overruled, and the movant excepted.

*Adams & Adams,* for plaintiff in error.

*Hitch, Denmark & Lovett, Stella Akin,* contra.

JENKINS, P. J. 1. The Supreme Court, in answer to questions certified to it in this case (161 *Ga.* 480), adjudicated that the amendment to the petition did not set forth a new and different cause of action, and that both the original petition and the petition as amended constitute an action in tort arising out of the negligent breach of a contract, but not an action in trover. Not being an action in trover, the plaintiff must recover, if it recovers at all, by proving a negligent breach of the defendant's duties arising out of the contract; and consequently, if the defendant did not make the contract for itself, the plaintiff could not recover under the form of action brought and maintained. It is the rule that "If the employer is in fact an agent and acts with the authority of an *undisclosed* principal, either he or such principal may be held liable at the election of the opposite party." *Willingham* v. *Glover,* 28 *Ga. App.* 394, 396 (3) (111 S. E. 206). The first question in the instant case, therefore, is whether the defendant contracted for itself, or on behalf of a disclosed principal. The contract being signed in its own name, with merely the word "agent" appended thereto, the presumption would ordinarily arise that it would be bound for the contract, on the theory that its principal was not disclosed. But such a presumption is a rebuttable presumption, and it is permissible to show that even though a simple contract was signed by an agent in his own name, the in-

tention of the parties was that the agent's principal should be bound by the contract and not himself. In the case of *Allen* v. *Montgomery*, 25 *Ga. App.* 817, 820 (105 S. E. 33), this court used the following quotations: " 'Contracts not under seal, other than negotiable instruments, require but little observance of mere form. The intention of the parties is the prevailing consideration in the construction of this class of contracts; and the rule is well established that, if the nature and circumstances of the transaction show that the intention was to bind the principal and not the agent, effect will be given to such intention, though the agent signs his own name merely.' 1 Am. & Eng. Enc. of Law (2d ed.), 1050, 1051. See 2 C. J. 674; *Merchants Bank of Macon* v. *Central Bank of Georgia*, 1 *Ga.* 418 (44 Am. Dec. 665); *Cleveland* v. *Stewart*, 3 *Ga.* 283; *Raleigh & Gaston R. Co.* v. *Pullman Co.*, 122 *Ga.* 700, 709 (50 S. E. 1008)."

The plaintiff in error takes the position that in making the affreightment contract it necessarily acted as an agent of the emergency-fleet corporation, or the United States shipping board, and that the courts must take judicial cognizance that this was the only capacity in which it could have acted at the time of the contract, in view of the war-time legislation of Congress. We have carefully considered the act of Congress of September 7, 1916 (39 Stat. 728 et seq., Comp. Stat. 1918, § 8146a et seq.), relating to the formation of the United States shipping board, out of which grew the emergency-fleet corporation; the various acts of Congress amendatory thereof, and also the case of The Lake Monroe, 250 U. S. 246 (39 S. Ct. 460), treating of such acts, and have arrived at the conclusion that the culmination of the powers and exercise thereof in and by the fleet corporation did not ipso facto disarm all shipping interests and owners of vessels in this country from doing foreign business and making contracts therefor as principals. This act and the conduct of the President thereunder did not ipso facto, we think, have the sweeping effect thus claimed for them of relegating all such shipping interests and owners to the category of bare agencies for the government. The act seems to have provided that these agencies of the government should have the power to requisition any or all of such facilities for foreign trade; and that it would remain with them as to vessels and other

facilities which they would so requisition for service to the government in such trade.    In the case of The Lake Monroe, 250 U. S. 252 (supra), the court said:   "In this state of affairs, Congress embodied in the Urgent Deficiencies Appropriation Act of June 15, 1917, c. 29, 40 Stat. 182, a clause entitled 'Emergency Shipping Fund,' which conferred upon the President broad powers of control over contracts for the building, production, or purchase of ships or material, and among others the power to purchase, requisition, or take over the title to, or the possession of, for use or operation by the United States any ship now constructed or in process of construction or hereafter constructed, or any part thereof, or charter of such ship."   So it will be seen that they were not taken over in mass or requisitioned merely by the passage of the legislation or by the bestowal of these powers.    And in claiming such requisitions of particular facilities by the government litigants have been left by the legislation, and the construction of it by the court, to show such facts by aliunde proof.    From what has been said the question of whether the defendant below could act and did act as agent remains a question of fact; and we can not dispose of the question as a matter of law.

However, we are of the opinion that if the defendant below *has* shown, or hereafter shows, that in making the affreightment contract it did not act as a principal, but as a matter of fact was known to be acting as an agent for a disclosed principal, and that if the plaintiff below knew that the defendant was really acting in the matter for a disclosed principal, and not for itself, there can be no recovery in this action as brought and as maintained.    The petition was drawn to recover damages against the defendant for its negligent failure to perform its contract duties under its affreightment contract.    It was not drawn to recover against an agent for a tort committed by it, independently of the contract. The suit is admitted not to be in trover; and was so held by the Supreme Court.    It is not an action for pure conversion, independently of the contract, and resting upon a basis of pure trespass.    It is founded upon the violation of a carrier's public duty arising out of its contract of carriage.    And it is the law of this State that in such an action privity between the parties to the action must be shown.    The Civil Code (1910), § 4408, provides as follows: "No privity is necessary to support an action of tort; but if the tort

results from the violation of a duty, itself the consequence of a contract, the right of action is confined to the parties and privies of that contract, except in cases where the party would have had a right of action for the injury done, independently of the contract." The suit as here brought and maintained could not have been maintained against anybody independently of contract. The contract must inevitably be looked to in order to ascertain what duty was violated by the guilty party. And it must inevitably be looked to in order to ascertain the party who was bound to the performance of that duty. Assuming, therefore, for the sake of the argument, that under the proof submitted the defendant was an agent only in the making of the contract, and that he made it for a disclosed principal, then the defendant, not being bound by the contract, is not liable to the plaintiff for the acts of negligence arising out of the contract as specifically charged in this petition.

The rule would be otherwise if the basis of the action did not arise out of a contract. If the suit was in trover as for a conversion of the property, independent of any contractual obligation, it could be maintained, whether or not the defendant was an agent, for in that event the tort thus committed would rest firmly upon the law of trespass; and any one, whether in the capacity of principal or agent, would be liable where it appeared that he actively participated in the conversion, either by himself or in concert with others. As showing that it is the contract which determines the duty to be performed, in cases like we have here, we call attention to the language of the Supreme Court in the case of *King* v. *Southern Ry. Co.*, 128 *Ga.* 285, 288 (57 S. E. 507): "The demurrer was properly overruled. The petition set forth a cause of action, and was not demurrable for duplicity or for joining an action ex contractu with one ex delicto. The action, fairly construed, was one ex delicto. The purchase and delivery of the ticket were alleged in order to *show the duty* of the defendant toward the plaintiff. It is not always entirely easy to distinguish between a suit for breach of contract for carriage, and the allegation of the contract in order to show a duty resting upon the carrier where the action is one for a tort, and yet it is well established that such a distinction does exist. Here the suit was not for a breach of the contract of carriage to Waco, but was for a tort committed on the plaintiff; and the purchase of a ticket by him and its acceptance

by the conductor of the company were alleged, to show the relation of himself and the company to each other, what was the duty of the company toward him under the circumstances, and that it violated its duty and committed a tort upon him." This court also adverted to the same principle, in another connection, in the case of *Lytle* v. *Southern Ry. Co., 3 Ga. App.* 219, 221 (59 S. E. 505), where the court said that "the suit is none the less ex delicto because a contract is alleged by way of inducement or as showing the relation of the parties [citations]. In this case, the defendant having agreed to safely deliver the cattle to the plaintiff at Tampa, Florida, a breach of legal duty, occasioned by the failure to deliver, arose in that city [citations]. The gravamen of the complaint is not any particular act of negligence by which the cattle were lost, but the legal wrong of failing to deliver at the destination [citation]." From what has been said it follows that if the jury should find, as a matter of fact, under the testimony submitted, that the contract was entered upon by the plaintiff with the defendant as agent for a disclosed principal, it could not recover in an action such as is here maintained.

2. But as we are not prepared to say that the jury were compelled to find, under the evidence submitted, that the contract was in fact entered upon by the defendant as agent for a disclosed principal, it becomes necessary to deal with the case on the supposition that the contract might have been entered upon by the defendant for itself and in its own behalf. On this theory of the case, since the defendant might be held liable for negligence in the performance of the duties arising out of the contract made by itself as a principal and on its own behalf, it becomes necessary to deal with the exceptions taken by the defendant with respect to the charge of the court.

3. Under the third ground of the amendment to the motion for a new trial, the court erred in refusing to strike a part of the testimony of Hood, a witness for the plaintiff, who swore that the cotton was delivered to the defendant at Brunswick; the motion to strike being based upon the ground that it appeared that the answer of the witness showed that he obtained such information from the yard-master of the railroads, and that said testimony was hearsay.

4. Having held, supra, under the third ground, that the hear-

say testimony of Hood as to delivery was illegally admitted, the court did not err in refusing to give a certain requested instruction to the effect that if the jury should find that such testimony was obtained from another, it would be hearsay and should be disregarded.

5. Having instructed the jury that the plaintiff must show that there had been a delivery of the cotton, in good order, to the defendant before it would be liable to the plaintiff, the court did not err in refusing a request to charge as follows: "If it appears from the testimony of Mr. Smith, without contradiction, that this cotton was received upon the yard of the Southern Railroad, belonging to the Southern Railroad, the railroad being at the time operated by the United States railroad administration, then you can not find that there was a delivery to one of the ships operated by the defendant and its contract was to transport per 'Western Front' or substitute. In this event your verdict would be for the defendant." Furthermore, the request was properly refused because there was other evidence from which the jury might have found that this cotton was delivered to the defendant. Of course, if the only delivery which was in fact made was upon the yard of the Southern Railroad, it would not be sufficient to render the defendant liable. We do think, however, since the suit is brought to recover the full value, as in good order, that in order for the verdict to be sustained the evidence should show, as it appears not to have been shown, that the cotton was delivered to the defendant while in good condition.

6. It appearing from the charge of the court that the substance of the following requested instruction was covered thereby, there was no reversible error in refusing to charge: "If you find from the testimony of Hood that he had sold this cotton to Stowell & Company prior to the making of this contract, then the property would belong to Stowell & Company, and they would be proper parties to sue, and plaintiff could not recover in this case. In the fourth paragraph of the declaration plaintiff alleges that the bales of cotton were the property of petitioner, meaning the plaintiff. In this event the case for the plaintiff would fail." But we are of the opinion that both the charge given by the court and this requested charge on this point were improper. The Supreme Court has construed the petition in the instant case as setting forth a

cause of action for a tort, growing out of negligence in the performance of the duties arising under a private contract. It has held specifically that the action is not trover. Section 4403 of the Civil Code (1910) provides as follows: "A tort is a legal wrong committed upon the person or property, independent of contract. It may be either—(1) A direct invasion of some legal right of the individual. (2) The infraction of some public duty, by which special damage accrues to the individual. (3) The violation of some private obligation, by which like damage accrues to the individual. In the former case no special damage is necessary to entitle the party to recover. In the two latter cases such damage is necessary." The petition in the instant case, as construed by the Supreme Court, must be taken as not being based upon "a direct invasion of some legal right of the individual," as in trespass or trover, nor is it based upon "the infraction of some public duty by which special damage accrues to the individual," such as a refusal to accept freight for shipment in contravention of the carrier's public duty so to do, or injury and damage to the shipment growing out of negligent conduct, independently of its contractual duty, which would render it liable as a public carrier. The petition is based, in our opinion, however, upon "the violation of some private obligation by which damage accrues to the individual." This court has defined a tort to be the following: "A tort is a legal wrong committed upon the person or property of another, independent of contract. But an action in tort may be maintained for the violation of a duty flowing from relations between the parties created by contract. *Payne* v. *Watlers,* 9 ·Ga. App. 265 (70 S. E. 1114)." *Commercial City Bank* v. *Mitchell,* 25 *Ga. App.* 837 (1) (105 S. E. 57). It is true that if the action in tort had been based upon a direct invasion of some legal right of the individual, or had been founded upon the infraction of some public duty by which special damage accrues to the individual, the suit could be maintained only by the person in whom the legal title to the damaged property inhered. But in a case such as the instant case, where the complaint is grounded upon negligence in performance of the duties imposed by the contract of shipment, and, therefore, while not based upon the contract, but in tort, is necessarily founded and grounded upon the obligations assumed under the specific contract, by ·the contracting parties thereto;

the maker of the contract is the one to complain of negligence in its performance rather than some other person not a party to the agreement. The defendant having contracted with the plaintiff for the performance of certain duties, it does not lie in defendant's mouth to say that the plaintiff can not complain of defendant's negligence in performance of the duties imposed by the contract. The principle just stated seems to be the very doctrine involved in the law set forth by section 4408 of the Civil Code (1910), which provides as follows: "No privity is necessary to support an action for a tort; *but if the tort results from the violation of a duty, itself the consequence of a contract,* the right of action is confined to the parties and privies to that contract, except in cases where the party would have had a right of action for the injury done, independently of the contract." We do not think that in a case where "the tort results from the violation of a duty itself the consequence of a contract," the right of action given to the parties and privies to that contract is taken away even though another party would have another different and distinct right of action for the injury independently of the contract. See 38 Cyc. 433, and footnotes. It is true that under section 5517 of the Civil Code (1910), "An action for a tort must, *in general,* be brought in the name of the person whose legal right has been affected, and who was legally interested in the property at the time the injury thereto was committed, and against the party committing the injury, either by himself, his servant, or agent in his employment." Such would always be the case where the action is founded on a direct invasion of some legal right of the individual, such as a suit in trover or for trespass or for the infraction of some public duty by which special damage accrues to the individual; but it will be observed that section 5517 of the Civil Code (1910), above quoted, does not say that an action for tort must always be brought in the name of the person whose legal right has been affected and who was legally interested in the property at the time the injury thereto was committed, but that this is merely the general rule; and we think that section 5517 of Civil Code (1910) does not apply when the action as brought is not upon a tort independent of a contract; but where it is in fact brought in tort "for the violation of some private obligation," then the general rule as to the requirement that title to the damaged property must lie in the

plaintiff does not apply. It might be urged that the plaintiff, although the maker of the contract, can not be heard to complain, because he has parted with the title to the damaged property; nevertheless, in making the contract he was, to say the least, the bailee of the true owner of the property; and both as such and as the maker of the contract he was entitled to maintain the action based upon the negligent violation of duty arising under the contract made in his own name. It is certainly not open to argument that if the suit sounded in contract and not in tort, and was specifically based upon the breach of the contract, the maker of the contract should sue, irrespective of the fact that he had parted with his title to the property. See *Carter* v. *Southern Railway Co.*, 111 *Ga.* 38 (36 S. E. 308, 50 L. R. A. 354); *Atlantic Coast Line R. Co.* v. *Meinhard,* 133 *Ga.* 684 (66 S. E. 897). The same argument as to lack of damage to the plaintiff, by reason of a lack of title to the damaged property, might be urged to an action ex contractu; but the theory upon which such a suit is justified is that inasmuch as the primary right of action is in the party making the contract, he must maintain the action even though in doing so he may be treated as a trustee to hold the recovery for the person actually entitled thereto. Moreover, the distribution of such legal recovery is a matter in which a guilty defendant has absolutely no concern. It follows, from the reasoning which we have employed, that inasmuch as the plaintiff in the instant case was the proper party to complain of negligence in the performance of the duties arising out of the contract which he made, and inasmuch as he was the only party who could thus complain, he can not be deprived of his right to complain, even though the alleged real owner of the property might be entitled to maintain another and different cause of action upon a tort, independent of the contract of affreightment.

7. It having been assumed by the litigants, by this court, and by the Supreme Court in answering our certified questions, that the correct measure of plaintiff's damages would be the market value of the cotton at the point of destination, Liverpool, at the time of the delivery, or, in the event of no delivery, at the time it should have been delivered under the contract, less the freight charges, the court erred in refusing to charge as follows: "Even if the plaintiff has met all other requisites in this proof, yet it would still be your duty to find for the defendant, unless plaintiff has

produced evidence before you to satisfy you what was the market price of the six bales of cotton in Liverpool, England, at the time when the cotton would have been delivered there had the contract been complied with. Unless such evidence has been produced to show when the delivery would have taken place and what the market value of the cotton would have been in Liverpool at that time, then the plaintiff has failed to make out a case and your verdict would be for the defendant. Evidence as to the value in Savannah or Brunswick would not satisfy this requirement." This charge was entirely proper, and it was error to refuse to give it, under the ruling of the Supreme Court in answer to our second certified question in this case.

8. The court erred in giving the excerpt complained of in the eighth ground of the motion, for the reasons set forth in the preceding section of the opinion.

9. It having been held supra, under the third ground of the motion, that the hearsay testimony of Hood was illegally admitted, the court erred in giving the excerpt complained of in the ninth ground of the motion.

10. The court having, in other parts of the charge given, charged the jury that the plaintiff must show that the cotton was in fact delivered to the defendant and in good order, and having also charged upon the question of the agency of the defendant in making the contract, and it being undisputed that the defendant had reconditioned the cotton and had actually sold it in violation of its contract, and that there had never been any delivery of the cotton in Liverpool at all, the court did not err in giving the excerpt complained of in the tenth ground of the motion.

11. The substance of the request having been fully covered by the charge given, the court did not err in refusing to give the requested charge set out in the eleventh ground of the motion.

12. For the reasons set forth in the first division of the opinion, the court did not err in charging as follows: "If, in view of all the facts, the contract itself and the testimony submitted to you, you find that the defendant made the contract for the United States shipping board, or the corporation which was operating the shipping board, known as the emergency-fleet corporation, and not for itself, and the plaintiff knew this and knew that the defendant had no interest in the freight money, save only a commission as agent,

then your verdict would be for the defendant. In a word, if he knew that Strachan Shipping Company had no interest in the transaction, except that they were going to get a commission and that they were acting for somebody else, if they knew it, they could not hold Strachan & Company liable—any more so than you could make a contract with John Smith and if he break it bring suit against Peter Brown."

*Judgment reversed. Stephens and Bell, JJ., concur.*