18946.   NAPIER *et al. v.* POOL.

188

Decided January 22, 1929. Rehearing denied February 21, 1929.

*John R. L. Smith, Joseph LeConte Smith, George A. Pindar,* for plaintiffs in error.

*McClellan & Jacobs,* contra.

Bell, J. This was a suit by Mrs. W. C. Pool against E. Tris Napier and E. Tris Napier Company, a corporation, to recover damages for personal injuries alleged to have been sustained by the plaintiff in falling through the floor of a dwelling house occupied by the plaintiff with her husband and rented by the husband from the defendants, the cause of action being grounded upon the alleged neglect of the defendants to make necessary repairs. The defendants demurred generally and specially, the court overruled the demurrers, and exceptions were taken. The plaintiff recovered a verdict for $2,000, after which the defendants made a motion for a new trial, which was refused, and the case was then brought to this court.

Without setting forth the allegations of the rather lengthy petition, or the numerous grounds of the demurrers, we may say that we have carefully considered the same, and have concluded that under the rulings made in *Stack* v. *Harris,* 111 *Ga.* 149 (36 S. E. 615), and *Miller* v. *Jones,* 31 *Ga. App.* 318 (120 S. E. 672), the petition set forth a cause of action and was not subject to any of the demurrers.

■ The contentions most vigorously pressed in this court have to do with the effect of certain parol evidence in regard to the terms of the contract of renting, it being insisted by counsel for plaintiffs in error that the contract appeared from the evidence to be in writing and to limit the obligations of the landlords touching the matter of repairs. The evidence disclosed that the house had been occupied by the plaintiff and her husband under a previous contract, which was about to expire, and that before the husband would agree to rent the place for another term he demanded certain assurances as to repairs, which it is claimed by the plaintiff were given by Mr. Napier, representing himself and the other defendant, partly in writing and partly in parol. The only evidence, however, of a written contract was the testimony of Mr. Pool to the effect that he gave rent notes on printed forms, in one of which was written: "E. Tris Napier Company agrees to put fastenings to windows, where needed, and to stop leaks on front porch." None of the notes were introduced in evidence, and the quoted stipulation was merely read from one of them by Mr. Pool while he was on the witness stand testifying for the plaintiff. It does not appear to whom the notes were payable, and their contents were not otherwise definitely shown, except that from the testimony of the same witness it appeared that they were "dated September 21, 1926, payable the first day of October, and so on."

While the stipulation above quoted was in reference only to windows and the porch roof, Mr. Poole testified: "I rented this house for another year, beginning October, 1926. At that time I told him the windows were in bad shape, the flooring, there were four or five planks that looked like they were decaying. . . It was agreed that he was to fix the flooring when I signed these notes. The note that Mr. Napier prepared did not contain the whole contract I made with him. It did not profess to embody all the repairs Mr. Napier agreed to make. I don't think it embodies anything but the windows and the leaks. He wrote what was in the note and handed me the notes to sign, and I says, ' I can't sign the note,' and he says, ' Why ? ' and I says, ' It don't call for what you, agreed to do '; and we had an argument of half an hour before I signed the note; Mr. Napier did not tell me that was all he intended to do. He said he would send the carpenter out there and do what ought to be done to the house. That was the part of the

same conversation in which I had taken up before." It was undisputed that the defendants had not repaired the floor at the time of the plaintiff's injury.

It is insisted for the plaintiffs in error that the evidence as above outlined disclosed that the parties had reduced to writing what appeared to be a valid contract of renting, and that since it contained specific provision for certain repairs to be made by the landlords, it should be taken as embracing the final and whole agreement of the parties upon that subject, and as excluding any prior or contemporaneous parol agreement to make other or additional repairs. It is contended that the evidence of the plaintiff's husband as to a verbal agreement to repair the floor was inconsistent with the written terms of the contract, and that, although this evidence was admitted without objection, it should have been disregarded, out of respect for the parol-evidence rule. This is one of the theories upon which it is argued that the verdict was without evidence to support it, and contrary to law.

We can not agree that the verdict should be set aside upon the grounds stated. Irrespective of whether the contentions of the plaintiffs in error might be sustainable in other circumstances, it does not appear, from the evidence, that the writing purported to contain all the stipulations of the contract. We say this because the notes were not introduced in evidence, and, with the exception of the one provision which a witness read out while testifying, the record fails to show anything specific as to their contents which would be material to the question under consideration. A contract may be partly in writing and partly in parol, and that which is in parol may be proved, where it appears from the face of the instrument or from the attendant circumstances that the writing was not intended to embrace the entire agreement between the parties, and where that which it is sought to show as a collateral verbal agreement does not in any way conflict with or contradict what is contained in the writing. *Forsyth Mfg. Co.* v. *Castlen,* 112 *Ga.* 199 (6, 7) (37 S. E. 485, 81 Am. St. R. 28); *Pryor* v. *Ludden,* 134 *Ga.* 288 (67 S. E. 654, 28 L. R. A. (N. S.) 267); *Bond* v. *Perrin,* 145 *Ga.* 200 (6) (88 S. E. 954).

Mr. Pool testified that he did not think the note from which he read embodied anything "but the windows and the leaks," but so far as appears there may have been other provisions showing affirm-

atively that the stipulation as to the repair of these was not intended to be exhaustive, and that what was shown by parol was consistent with the written instrument considered as a whole. It is a rule of construction that the whole contract should be looked to in arriving at the construction of any part of it (Civil Code of 1910, § 4268 (3)), and where only some isolated provision is shown, and it does not appear what else the instrument may have contained, it is impossible to determine whether testimony as to some collateral verbal agreement tends to infringe upon the rule against admitting parol evidence to vary the terms of a written instrument.

The defendants prepared the notes and were presumably acquainted with their contents, and the fact that no objection was made to the evidence regarding the verbal agreement to repair the floor would seem, in some measure, to indicate that this evidence was admissible. "Evidence is presumed to be admissible unless some objection is made which shows the contrary." *Jasper County* v. *Butts County,* 147 *Ga.* 672, 673 (95 S. E. 254).

Furthermore, the testimony of Mr. Pool, to the effect that the notes which contained the stipulation as to the windows and leaks "did not profess to embody all the repairs Mr. Napier agreed to make," was not a violation of the parol-evidence rule, but was secondary evidence as to the contents of the writing, and, having been admitted without objection, should not be absolutely ignored, where the instrument itself was not introduced in evidence for construction by the court.

If we are correct in the conclusion just stated, there was no merit in any of the exceptions to the court's charge; and the same would also be true of an assignment upon the refusal of a request to charge. It may be further said of the request, however, that it was not accurately adjusted to the facts, and could have been refused for that cause. It was framed upon the hypothesis that Mr. Pool "refused to sign rent notes for a new term of renting, unless and until the repairs which were to be made were enumerated in one of the notes, and [that] Mr. Napier refused to have any other items of repairs mentioned in the note." According to the testimony, neither Pool nor Napier so refused, but, on the contrary, the notes were finally executed with one item of repairs omitted, though fully agreed to.

■ It is further insisted that the verdict was wrong because it appeared that Mr. and Mrs. Pool had occupied the house for nearly a year, and took it "for the second term as it was, and defendants were bound to make no repairs of then known defects, except such as they expressly agreed to make." It is true that a landlord is not liable for injuries to a tenant or to another standing in his right *(Crossgrove* v. *Atlantic Coast Line R. Co.,* 30 *Ga. App.* 462 (2), 118 S. E. 694), resulting from a patent defect in the premises existing at the time of the lease, and of which the tenant knew or had means of knowing equal to those of the landlord, unless the rent contract stipulates to the contrary. *Aiken* v. *Perry,* 119 *Ga.* 263 (3) (46 S. E. 93). Nor is the landlord liable for such injuries arising from latent defects, unknown to the tenant, existing at the time of the lease, "unless the landlord actually knew, or by the exercise of ordinary care on his part might have known, of their previous existence." *McGee* v. *Hardacre,* 27 *Ga. App.* 106 (107 S. E. 563).

But, in addition to his evidence as set out above, the witness Pool, who was the tenant, testified: "What caused the plank that broke with my wife to fall through was that the water had leaked on it until it decayed the sill under it. I went underneath the house after she was hurt. I saw signs of decay; the sill was rotten. That could have been seen by anybody making an inspection of the porch. I could not see that defective condition of the plank that broke with Mrs. Pool from the top of the flooring." There was evidence to the same effect from Mrs. Pool, as follows: "I did not know that the part of the floor that fell with me was dangerous before I fell through. There was nothing about that plank that broke in, the top surface, to indicate to a careful person that it was dangerous to step on the part of the porch that fell in. In regard to the floor as a whole, there were other planks that gave evidence of weakness *four or five feet from where I fell* [italics ours]. I did not walk on that part of the porch. After I was able to get up and walk around, I did not ascertain what caused the plank to break. I saw the plank that broke. It had decayed underneath; it was not decayed at all on the top surface."

In view of this evidence, it should not be held as a matter of law that the particular defect was patent or that it was such that under the ordinary rule governing the relation of landlord and

tenant, the defendants could have had no possible legal duty concerning it.

While the evidence shows that the parties did agree specially as to certain matters, such as repairing windows, stopping leaks on front porch, and "fixing the floor," it can not be said absolutely under the evidence that such special agreement, as to these subjects, was intended to be exclusive, or that as to the floor it included more than the repair merely of the "four or five planks that looked like they were decaying." It was in evidence that Mr. Napier promised that "he would send the carpenter out there and do what ought to be done to the house." This was to imply that as to the general condition of the premises the common duty of a landlord as declared by law would stand without change and be applicable as between the parties. The evidence authorized the inference that the plank that broke was another and different plank from those mentioned in the negotiations which culminated in the second contract, and, more than this, that it actually gave way because of a rotten sill. In these circumstances it became a legitimate inference that the defect complained of was a matter as to which the rights and liabilities of the parties would be governed by such general rule rather than by the terms of the special agreement.

In other words, while it is seen that as to certain particular subjects there was an agreement tending to vary what might otherwise have been the duty of the landlords, yet the cause of the controversy could have been found to lie in a different subject, with reference to which the duty as to repairs was to be determined by implication of law. Indeed, the special agreement seems to have had the effect of increasing instead of limiting the liability of the landlords; but as to the matter upon which the cause of action was predicated their obligation appears to have been neither greater nor less than that implied by law. At least this is the case as the jury could have found it to be, under the evidence.

The petition suggested nothing as to a special agreement. But since as to the duty of the landlords we must hold that the allegations were supported by the evidence, it is unnecessary to determine whether in such a case there would be a fatal variance between the allegata and the probata should it appear that the duty claimed to have been breached arose only by an express undertaking.

The new lease contract was entered into on September 21, but the old lease did not expire until September 30, after which the new lease became immediately effective. The plaintiff was injured on October 27, after the beginning of the new term. The evidence shows that at the making of the new agreement the defendants were put upon notice that the porch was in a condition of disrepair, and especially that certain planks appeared to be decaying. While there was no other evidence upon the subject of notice, yet, since the landlords became obligated to repair this portion of the premises, and should have done so within a reasonable time, they were chargeable with notice of all defects which a compliance with such obligation might have disclosed and would be liable in damages for injuries resulting from hidden defects which should thus have been discovered. *Godard* v. *Peavy,* 32 *Ga. App.* 121 (122 S. E. 634) ; *Turner* v. *Dempsey,* 36 *Ga. App.* 44 (135 S. E. 220). Express notice of a defect is unnecessary in order to bind the landlord where he already knows of it, or is in such position that by the exercise of ordinary care he should have discovered its existence. *Ross* v. *Jackson,* 123 *Ga.* 657 (51 S. E. 578) ; *Gulhman* v. *Castleberry,* 49 *Ga.* 272; *While* v. *Montgomery,* 58 *Ga.* 204; *Florence* v. *Northcull,* 145 *Ga.* 265 (88 S. E. 933) ; *MeYere* v. *Withers,* 15 *Ga. App.* 688 (84 S. E. 163) ; *Dougherty* v. *Taylor,* 5 *Ga. App.* 773, 776 (63 S. E. 928) ; *McGee* v. *Hardacre,* supra.

Where the landlord is in such position as to be chargeable with such duty, it is immaterial that the facts creating such responsibility as to knowledge may have arisen at the making of the lease contract and before occupancy thereunder, or that no later notice was given. Compare *Williams* v. *Jones,* 26 *Ga. App.* 558 (106 S. E. 616) ; *Marr* v. *Dieter,* 27 *Ga. App.* 711 (4) (109 S. E. 532).

Under the facts of this case the question of whether the period from September 21 until October 27 was a reasonable time within which defendants should have performed the duty to make the repairs was one for determination by the jury. *Bearden Mercantile Co.* v. *Madison Oil Co.,* 128 *Ga.* 695 (3) (58 S. E. 200).

It does not appear from the evidence as a matter of law that the plaintiff could have avoided the injury by the exercise of ordinary care. *Stack* v. *Harris,* 111 *Ga.* 149 (36 S. E. 615) ; *Miller* v. *Jones,* 31 *Ga. App.* 321 (120 S. E. 672).

■ In one of the grounds of the motion for a new trial it is com-

plained that the verdict is contrary to law for the reason that it is joint against both defendants, and that there is no evidence to support it "as against one of defendants; and since it must be set aside as against one of them, it follows that it must be set aside as against both." Irrespective of whether it be true that the verdict, if supported as to one but not as to the other, should be set aside as to both, we think the evidence was sufficient to show that each of the defendants was liable, and that the liability was joint.

According to the testimony of the plaintiff's husband, the contract was made with Mr. Napier, and the evidence did not demand the inference that he was acting solely as agent for the Napier company. *Strachan Shipping Co.* v. *Hazlip-Hood Cotton Co.*, 35 *Ga. App.* 94 (132 S. E. 454). On the other hand, the jury were authorized to find that he was a party to the contract. As to the other defendant, there was the stipulation, "E. Tris Napier Company agrees to put fastenings to windows, where needed, and to stop leaks on front porch." Presumably this company would not have agreed to make these repairs unless it was a party to the renting. It was not necessary for the plaintiff to show that the defendants were joint or common owners of the property; for if they leased the house as contended, ownership would be immaterial, in view of the issues made. *Strickland* v. *Stiles*, 107 *Ga.* 308 (3) (33 S. E. 85).

There was no contention by counsel for the plaintiffs in error, either in the argument or in the briefs, that the evidence failed to show the authority of Mr. Napier to represent the company in making the rent contract, although the point has been made in the motion for a rehearing wherein it is further insisted that the question was inherent in the general grounds of the motion for a new trial. The thing previously urged was that the stipulation contained in one of the notes as quoted above should be taken as constituting the entire contract upon the subject of repairs, and both of the defendants relied upon this as their principal ground of defense.

But to look to the matter upon its merits, it appears that there was a ratification, even if no original authority. Mr. Napier purported to act for the other defendant in preparing the rent contract and in placing therein the stipulation referred to. The tenant occupied the premises under the contract as thus made and presum-

ably paid the rent. It is shown in the record that the case was the subject of a previous trial, and that in that hearing the circumstances of the making of the contract and of the interpolation of the clause mentioned were inquired into. Even if the company had no previous knowledge upon the subject, it was informed in that trial of what had been done by the other defendant in its behalf. So far as appears, there was never in the court below any suggestion that the agreement was not made with full authority from all parties concerned. "To bind the principal, there is no necessity for a positive or direct confirmation on his part, of the act of the agent, but it may arise by implication, from the acts or proceedings of the principal in pais. 3 Chitty on Com. and Manuf. 197, 198; 1 Livermore on Agency, 45; Story on Agency, § 253. And for this purpose the acts and conduct of the principal are construed liberally in favor of the agent. Slight circumstances and small matters will sometimes suffice to raise the presumption of ratification." *Byrne* v. *Doughty,* 13 *Ga.* 46 (3, 4), 52; *Strong* v. *West,* 110 *Ga.* 382, 387 (35 S. E. 693); *Thompson* v. *Neely,* 32 *Ga. App.* 131, 134 (123 S. E. 171). A ratification by the principal refers back to the act ratified, and becomes effective as if originally authorized; and a ratification once made can not be revoked. Civil Code (1910), § 3591.

Even as to a wilful trespass committed by an agent, the Supreme Court has said that, although the agent may have exceeded his authority in so doing, his act was capable of ratification, which could be implied from the acts or silence of the principal, and that where once made it could not be revoked. *Byne* v. *Hatcher,* 75 *Ga.* 289 (3). See further, in this connection, *Ellis* v. *U. S. Fertilizing & Chemical Co.,* 64 *Ga.* 571 (4); *Crockett* v. *Sibley,* 3 *Ga. App.* 554 (2) (60 S. E. 326); Civil Code (1910), §§ 3601, 3603, 4416; 2 C. J. 470, 521; 21 R. C. L. 919, § 99.

From all the facts and circumstances the jury were authorized to infer not only that Mr. Napier had authority to enter into the agreement upon the terms shown by the evidence, but that having such authority the notice which he received in making the contract was such as to bind both himself and the other defendant, and to make each of them liable for any negligence in failing to discover and repair the defect.

■ There being evidence tending to show that the plaintiff's in-

jury practically disabled her for several weeks, during which she suffered much pain, that at the time of the trial (about fifteen months after the accident) she was still suffering to some extent, and that her suffering would probably continue indefinitely, it can not be said as a matter of law that the verdict is so large as to demand the inference that it was induced by prejudice, bias, or mistake on the part of the jury. *Central of Georgia Ry. Co.* v. *O'Kelley,* 14 *Ga. App.* 273 (2) (80 S. E. 688) ; *Lamb* v. *Kennedy,* 15 *Ga. App.* 533 (2) (83 S. E. 796) ; *Cohen* v. *Phipps,* 33 *Ga. App.* 431 (126 S. E. 881) ; *Hotel Equipment Co.* v. *Liddell,* 32 *Ga. App.* 590 (4), 605 (124 S. E. 92), and cit.

The court did not err in refusing a new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*