LOUISIANA OIL CORPORATION *v.* RAYNER.

(Division B.   March 9, 1931.)

[132 So. 739.   No. 29285.]

**Welch & Cooper,** of Laurel, and **Green & Green,** of Jackson, for appellant.

784

Welch & Cooper, of Laurel, **Green & Green**, of Jackson, and **Blanchard, Goldstein, Walker & O'Quin**, of Shreveport, La., for appellant.

Montgomery & Buchanan, of Laurel, for appellee.

Argued orally by **Garner W. Green**, for appellant, and by **J. R. Buchanan**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellee brought this action against appellant in the circuit court of the second district of Jones county, to recover damages alleged to have been suffered by appellee on account of the breach of an implied warranty by appellant of the fitness of a gasoline filling station for its purposes, which appellant had theretofore leased to appellee; the declaration alleging that the damage sued for had been sustained by reason of a defective equipment furnished by appellant to appellee as a part of the leased premises. There were two counts in the declaration, one for the loss of gasoline valued at five hundred thirty-nine dollars and eighty-four cents, and one for the loss of profits on the lost gasoline, in the sum of one hundred six dollars and seventy-five cents. There was a trial, resulting in a verdict and judgment in favor of appellee in the sum of five hundred thirty-nine dollars and eighty-four cents; and from that judgment appellant prosecutes this appeal.

Appellant owned a filling station in the city of Laurel, constructed and intended for the retail sale of gasoline and other products used in the operation of motor vehicles. On the 2d day of August, 1927, appellant leased to appellee the filling station, which lease was evidenced by a written contract between the parties, a copy of

which, leaving off its formal parts and the description of the property, follows:

"Louisiana Oil Corporation, a Delaware Corporation, whose principal place of business is Shreveport, Louisiana, lessor: M. L. Rayner, Lessee.

"The Lessor does by these presents lease and let unto the Lessee that certain retail gasoline sales station in Laurel, Second District, Jones County, Mississippi, together with the equipment used in connection therewith per inventory attached hereto, marked 'Exhibit A,' said station being situated upon that certain lot particularly described as follows: . . .

"The above described parcel of ground being a portion of Lot 1, Block 'B' of the North Central Addition to the City of Laurel, Jones County, Mississippi, as per plat filed for record in Records of Second District, Jones County, Mississippi.

"The leased premises shall be used solely as a retail gasoline sales station where only the gasoline, motor oils and greases manufactured or sold by the Lessor are distributed and said products shall be distributed in their natural state without the addition of any 'dopes,' 'tonics' or blending with any other products.

"Lessee shall at all times keep on hand for sale and distribution at the leased premises the trade marked Motor Oils manufactured or sold by Lessor, and shall not permit his stock thereof at any time to become insufficient to satisfy the demands of the retail trade.

"Lessor shall sell to Lessee for cash at prices not greater than its prevailing tank-wagon price all such products as may be required in the conduct of the business upon the leased premises and Lessee shall handle no other products thereon.

"The equipment described shall be used only upon the leased premises and in connection with the business conducted thereon.

"The term of this lease shall be for a period of five years commencing the 1st day of July, 1927; provided, however, that neither party may terminate same at any time without regard to the term stated by written notice delivered to the other party fifteen days prior to the date upon which such termination is to become effective. Should Lessor give notice of its intention to terminate this agreement Lessee shall consider such notice as the notice to vacate required by law, all other notices or legal demands being waived.

"In consideration of this agreement Lessee shall pay to Lessor a rental of Twenty-five and no/100 ($25.00) Dollars per month, which shall be paid in advance on the 1st day of each calendar month, beginning January 1st, 1928.

"Should the contract be terminated upon notice, as herein provided, or upon the violation of any of the stipulations of this contract, any unearned rental which may have been paid to Lessor shall be refunded to the Lessee.

"Upon the expiration of the term of this lease, the termination there upon the fifteen days' notice herein provided or upon the violation of any provision of the contract which shall terminate the lease without the necessity of any notice whatever, Lessee shall immediately redeliver the leased premises and all equipment to Lessor in the same condition as when received, ordinary wear excepted.

"Should Lessor be compelled to resort to legal process to obtain possession Lessee shall pay reasonable Attorney's fees, and all other damages which Lessor may suffer.

"This contract is personal to the Lessee and the premises shall not be sublet or this agreement assigned.

"Executed in duplicate, this 2nd day of August, 1927."

Appellee operated the filling station under the lease contract from July 1, 1927, until December 2, 1929. Thereafter he continued to operate the station under a different arrangement until March, 1930.

On the trial, the evidence either established without conflict, or tended to establish, the following state of facts: Soon after taking over the filling station under the lease, appellee discovered that he was suffering a loss in his gasoline sales, and so notified both the driver of appellant's tank truck, and also appellant's local agent. Appellee notified them that his gasoline sales did not correspond in gallonage with his purchases from appellant. Appellant's servants promised appellee to ascertain and correct the cause of the loss. To that end they measured the tank wagons and the underground tank, but failed to find the trouble there. In January or February, 1930, appellant's servants tested the pumps of the filling station, through which the gasoline was delivered from the underground tank to the customers. This test revealed that the pumps were defective in measurement. According to appellee's evidence the capacity of the pumps was two and one-half per cent. more than intended. The pumps were of steel, with a glass container at the top, the container being marked with a graduated scale in divisions of one gallon each. The capacity of the containers was supposed to be ten gallons each; and each container was equipped with an overflow pipe at the top thereof, which was supposed to return to the underground tank all gasoline over ten gallons pumped into the container. The gasoline was pumped from the underground tank into the container by means of a lever. When the customer was being waited upon the glass container was usually pumped full, the excess being allowed to return to the underground tank. The gasoline was then delivered to the tank of the motor vehicle of the customer through a hose equipped with a

closing valve. The measurement of the amount sold to the customer was arrived at by the distance lowered in the glass container, as shown by the gauge thereon, and the customer paid for the gasoline accordingly.

The final test of the container developed that the overflow pipes in both pumps were a fraction of an inch too high, leaving more than ten gallons of gasoline in each container; and that some of the graduation "lines" on the gauge were too far apart, measuring more than a gallon per graduation; that one of the tanks was slightly leaning, showing the mark of the gasoline in the container slightly higher on one side than on the other, thereby affecting the amount shown by the gauge.

This final test was made in January or February, 1930, and was made by appellant's agents and employees in co-operation with appellee. According to the appellee's evidence, he had been continually complaining to appellant of his losses, from soon after the execution of the lease contract until the discovery of the cause; and appellant's agents and employees had time and again promised to find and correct, if possible, the defects in the apparatus attached to the station which caused the loss. After the discovery of the defects in the apparatus, they were remedied by appellant.

The evidence showed that during appellee's operation of the filling station, under the lease, he purchased from appellant, and paid cash for, one hundred six thousand seven hundred forty-five gallons of gasoline, costing twenty-one thousand five hundred ninety-two dollars and seventy-five cents, which he sold to his customers at a loss in quantity of two and one-half per cent., which, at the purchase price, amounted to five hundred thirty-nine dollars and eighty-four cents; and that his profits thereon would have been one hundred six dollars and seventy-five cents.

Both parties asked for a directed verdict, which was refused. The court instructed the jury for the appellee that there went with the lease contract an implied warranty on the part of the appellant that the pumps and containers would measure accurately. The principal error assigned and argued is the giving of that instruction. Appellant's contention is that the filling station, pumps, and all the necessary attachments were real estate, and that, under the law, in the lease of land there is no implied warranty on the part of the landlord that the premises are fitted for the purposes for which they are intended. To sustain that contention, appellant cites numerous authorities, among others, Jones v. Millsaps, 71 Miss. 10, 14 So. 440, 23 L. R. A. 155; Green v. Long, 152 Miss. 117, 118 So. 705; and Plaza Amusement Co. v. Rothenberg (Miss.), 131 So. 350.

In Jones v. Millsaps, the court held that, in the absence of deceit in making a lease contract, there was no express covenant on the part of the landlord to repair. In Green v. Long, the court held that in the absence of an express covenant in the lease, and in the absence of deceit and misrepresentation, there is no implied covenant that the lessor will make repairs, or that the leased premises are suitable for the lessee's business. In the Plaza Amusement Company case the court reiterated the same principles as were declared in those two cases; and, in addition, held that knowledge on the part of the lessor of the purpose for which the premises were leased does not give rise to an implied covenant on the part of the lessor that the premises are fitted for that purpose; and that the lessee had the right to put the leased premises in suitable condition for the use intended, but had to do so at his own expense.

The evidence for appellant showed that the pumps and containers were bought from a reputable manufacturer, and appellant contends that, because of that

fact, under the authority of Orgill Bros. v. Everett, 138 Miss. 213, 103 So. 82, there was no implied warranty of fitness. The Orgill Bros. case involved, not a lease, but a sale of cotton scales by a dealer—not by the manufacturer. The scales had an established trade-name, and had previously given satisfaction to the trade. All scales were tested at the factory, but the particular scales involved in that case were defective. The court held that without knowledge of the defect, which could not have been ascertained by reasonable inspection, the dealer did not impliedly warrant to the buyer, who did not rely on the dealer's judgment in making the purchase, that the scales were free from defects.

Appellant cites numerous authorities to sustain its position that the filling station and all pumps and attachments constitute real estate, and not personal property; and therefore the principle applies that there was no implied warranty of the fitness of the pumps and containers.

We are of opinion that it is entirely immaterial, under the facts of this particular case, whether the filling station is real estate or personal property. This case is one of its own kind—this is not the ordinary lease contract between landlord and tenant. Appellant was more than a mere landlord, and appellee more than a mere tenant. It is true that the lease contract provided that appellee should pay appellant a monthly rental of twenty-five dollars for the filling station; but that was not all the consideration moving to appellant. Under the terms of the contract, appellant and the appellee entered into business together, although they were not partners in the legal sense; it was a joint business, in which they were jointly interested. The contract provided that the leased premises should be used solely as a retail gasoline sales station, where only gasoline, motor oils, and greases, "manufactured or sold by the lessor are distributed;"

that appellee should keep on hand for sale and distribution at the filling station "the trade-marked motor oil manufactured or sold by lessor, and shall not permit his stock thereof at any time to become insufficient to satisfy the demand of the retail trade;" that appellee should pay for such products an amount not greater than appellant's tank wagon prices, and that he should handle no other products; that the equipment furnished by appellant for the purpose should be used only upon the leased premises, and in connection with the business conducted thereon; and at the termination of the lease appellee should immediately redeliver to appellant the leased premises and all equipment, in the same condition as when leased, "ordinary wear excepted."

It is therefore, very plain from the contract that the consideration moving the appellant for the lease was, not only the twenty-five dollars per month rental, but, in addition, appellant had a very substantial and material interest in the amount of its products to be handled by appellee. Appellant was selling its products to appellee at prices that it supposed would yield a profit; therefore, appellant was, of course, interested in the volume of its products handled by appellee. Although not a partnership, as stated, it was a joint enterprise, in the profits of which both parties to the contract had an interest. Under the contract, appellee had to take the filling station and apparatus going with it, in their then condition as furnished by appellant; appellee had no right to replace the pumps and the containers with others, without a new contract with appellant, authorizing him to do so. Under the terms of the contract, appellee was to return to appellant, at the expiration of the lease, the identical filling station and its equipment which was furnished him by appellant at the beginning of the lease, "except ordinary wear."

The evidence for appellee tended to show that in carrying out the contract both parties put the construction upon it that there went with the lease an implied warranty on the part of appellant that the pumps and containers would measure accurately. There is no language in the contract that would exclude such an interpretation by the parties. As shown in the statement of the case, appellee discovered soon after the beginning of the lease that in some way he was losing gasoline, and time and again complained to appellant's agents and servants of such loss; and they recognized the obligation on appellant to see that the underground tanks and the containers measured their own contents correctly, and undertook to find the defect, and finally did locate it.

We do not mean to trench on the principle laid down in the decisions of this court that in a lease contract there is no implied warranty on the part of the landlord of the fitness of the premises for the purposes for which they were leased. The soundness of these decisions is not questioned. But we do hold that the facts of this particular case take it out from under that principle. Here the landlord says to the tenant, in effect: "There is the filling station—you must take it as it is, pumps, containers and all, and at the expiration of the lease you must return exactly what you got, ordinary wear excepted; and, in addition, you must buy and sell our products alone, according to our measurements, and at our prices."

We think, under the particular facts of this case, there went with the lease an implied warranty that the pumps and the containers would measure accurately. According to the evidence of appellee, that was the construction the parties put on the contract—that is the way they operated under it. That fact, in connection with the other facts above stated, we think takes this case away from the principle that ordinarily there is no implied warranty of fitness by the landlord.

Appellee cross-appeals on the ground that the jury failed to award any amount in their verdict on account of appellee's loss of profits on the lost gasoline. There was conflict in the evidence as to how much gasoline was lost. In view of that conflict, the jury, in rendering their verdict, may have thought that the amount awarded was sufficient to cover the price of the lost gasoline, as well as the lost profits thereon. We are of opinion, therefore, that the cross-appeal is without merit.

Affirmed.