**D–X SUNRAY OIL COMPANY, a corporation, Plaintiff in Error,**

v.

**G. E. BILLUE, Defendant in Error.**
**No. 38883.**

Supreme Court of Oklahoma.
March 14, 1961.

Rehearing Denied April 18, 1961.

M. Darwin Kirk, J. P. Greve, Ben Hatcher, Tulsa, for plaintiff in error.

Harry G. Davis, Kelly Brown, Muskogee, for defendant in error.

WILLIAMS, Chief Justice.

This is an appeal from a judgment obtained by defendant in error, hereinafter referred to as plaintiff, against plaintiff in error, hereinafter referred to as defendant, for damages for alleged permanent injuries to plaintiff's underground water supply. Plaintiff claimed such injuries to have been caused by subsurface pollution from gasoline which leaked from underground storage tanks owned by defendant.

At all times herein mentioned, plaintiff owned the west 87 feet of a lot in Webber Falls, Oklahoma, on which was situated his home. Beneath the house was a well from which plaintiff's family secured all the water used in the home. An electric

pump was on the well with pipes therefrom to various rooms in the house.

Plaintiff alleged in his petition that the water from such well was pure and wholesome prior to January, 1958; that beginning in January, 1958, the water from the well was so heavily impregnated with petroleum products that it could not be used; that the contamination will be continuous for a period in excess of ten years; that plaintiff's property is unfit for use for the purposes intended; that plaintiff cannot secure water near enough for use for plaintiff's purposes by reason of the contamination of the soil of the underlying strata and water supplying sand. Plaintiff asked for damages in the amount of $1,000 a year for ten years or a total damage of $10,000.

In its answer defendant admitted it was the lessee of Carl Edwards and wife of the property (east 38 feet of the same lot) and adjoining plaintiff's property but pleaded that in 1955 it executed a sub-lease to Carl Edwards; that Edwards had been in full, complete and exclusive possession since the execution of the lease. Defendant denied that it was liable or obligated to pay plaintiff.

In addition to the matters set forth in the pleadings the testimony developed that plaintiff and his family continued to use the water for all purposes except drinking; that they resumed drinking it after a period of approximately nine months, but it still had a slight odor and taste of gasoline; that the water improved after defendant replaced the three tanks in question which was done six or seven months after the contamination first appeared; that a chemist tested the water nine months after the contamination first appeared, and found it to be pure; that, according to a civil engineer, under normal conditions the water in plaintiff's well would be all right probably in four or five years, and if there was excessive rainfall, it might be much sooner; that the water in the well at the service station became contaminated about the same time plaintiff's did, but the sub-lessee sank that well an additional four feet and obtained good water; that plaintiff told the sub-lessee he had blown up plaintiff's deal by driving his well deeper and that it had hurt plaintiff's case.

Defendant's demurrer to the evidence of plaintiff and motion for directed verdict in its favor were overruled. The jury returned a verdict in favor of plaintiff, and judgment followed the verdict. Defendant appeals.

■ Numerous assignments of error are made by the defendant. They are presented under six propositions. For the purposes of this opinion we deem it necessary to discuss only the second which is:

"Any damages resulting from the pollution of plaintiff's subterranean water supply, as the result of gasoline escaping from the Carl Edwards service station involved herein, cannot be charged to defendant because said service station property had been subleased by defendant to Carl Edwards on December 5, 1955, and said Carl Edwards, at all times thereafter, operated said service station and was in exclusive possession and control thereof, including all property and equipment therein situated."

The sub-lease from defendant back to Edwards in part provided:

"Lessee hereby acknowledges that he has examined the premises, buildings and property herein leased and the equipment hereinafter itemized and has received same in good order and repair, except as specifically noted hereon, and that no representation as to the condition or repair thereof have been made by Lessor * * *

"Lessee further agrees to keep said premises, buildings, property and equipment, and each and every part thereof, together with adjoining sidewalks, areas, alleys and entrance driveways in good order and repair, and in a clean, safe and healthful condition; * * * to pay for all upkeep and repairs; * * *

"Lessee agrees to be exclusively liable for and to pay any and all damages to persons or property * * * caused by or arising out of * * * (c) any leakage, fire, explosion or other casualty at said leased premises, whether same is due to any imperfection or defect, latent or patent, of the buildings or equipment thereon * * *

"It is expressly understood and agreed between the parties hereto that during the time Lessee is in possession of the leased premises and equipment under this lease Lessor has and shall have no right of control over said premises and equipment, and shall have no right or authority in respect to the management, supervision, or control thereof or the business conducted in connection therewith by Lessee.

"The terms and provisions hereof shall be applicable to the following inventory of equipment and to any other or additional equipment owned by Lessor and which is now or hereafter, during the term of this lease and any renewal or extension thereof, installed and used at the above described premises."

Said inventory included the following:

"3 Underground Tanks, Size 550 Gal * * *"

The plaintiff introduced no evidence that the tanks in question were leaking prior to or at the time of the execution of the sub-lease. The pollution of plaintiff's subterranean water supply was not noticed until two years or more after the sub-lease became effective.

The tanks in question were in place on the premises at the time of the execution of the base lease from Edwards and his wife to defendant. The evidence indicated that they had been buried on the premises for some thirty or more years prior to the execution of the base lease.

Plaintiff in his brief cites no authority to support his contention that defendant as sub-lessor is liable for damages resulting from the leaking of the three tanks.

In Wick et al. v. Wasson, 193 Okl. 209, 142 P.2d 124, 125, we said:

"It is the settled doctrine in this jurisdiction that a landlord of a building leased or rented for business purposes is not, in the absence of a contract, under any obligation to keep the building in repair or liable for any loss or damage caused by defects therein. Price v. MacThwaite Oil & Gas Co., 177 Okl. 495, 61 P.2d 177; Nehring v. Ferguson, 170 Okl. 383, 40 P. 2d 1040; Young v. Beattie, 172 Okl. 250, 45 P.2d 470."

In 53 A.L.R., Landlord's Liability to Third Person, page 334, the following is said:

"In the absence of an agreement to repair, the landlord is not liable to a third party for injuries to his property from a nuisance caused by water percolating upon adjoining premises from a privy and sewer connections, resulting from dilapidation of the leasehold premises while in the possession of the tenant. Knauss v. Brua (1884) 107 Pa. 85."

The testimony and evidence of plaintiff did not establish as a fact that defendant agreed to keep the premises in repair. Rather the lease provided that the sub-lessee was to keep the premises in repair and was to be liable for and pay any and all damages to persons or property caused by or arising out of any leakage.

█ There being a failure of proof essential to a recovery by the plaintiff, the trial court should have sustained the demurrer of the defendant to the plaintiff's evidence and upon failure to do so should have sustained the motion of defendant for directed verdict. See Aetna Life Ins. Co. v. Goen, 188 Okl. 500, 111 P.2d 195. Therein we said:

"When there is failure to offer competent evidence and proof of necessary element of plaintiff's recovery, the

defendant's motion for a directed verdict should be sustained."

Because of error of the trial court in the respect above pointed out, the cause is reversed and remanded with directions to enter judgment for the defendant.

WELCH, DAVISON, HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

BLACKBIRD, C. J., dissents.