SKELLY OIL COMPANY, a Corporation,
Plaintiff in Error,

v.

Delbert DARLING, Jr., Defendant
in Error.

No. 39539.

Supreme Court of Oklahoma.

April 24, 1962.

As Corrected July 17 1962.

As Corrected July 17, 1962.

Application for Leave to File Second
Petition for Rehearing Denied
Sept. 11, 1962.

David M. Cook, Sam C. Oliver, Tulsa, for plaintiff in error.

Joe Stamper, Lee Welch, Antlers, for defendant in error.

BLACKBIRD, Vice Chief Justice.

The issue in this appeal is whether or not an oil and gasoline marketing company that has leased a service station from its owner, and sub-leased it to an operator, is liable in damages for personal injuries to one of the operator's employees, suffered when the hydraulic lift in the station's lubrication room suddenly dropped, while he was under it, greasing an automobile for one of the station's customers.

In this case, the service station, which is located on the Main Street of Antlers, Oklahoma, had been built several years before being leased by its owners, an individual and his wife, to plaintiff in error, defendant below, in the early part of 1957, or prior thereto. For sometime prior to July 29th, 1958, said defendant had the station sub-leased to one Jess Pierce. On the latter date, one W. T. Barnett purchased the business from Pierce, and Pierce's lease of the premises was replaced by one defendant entered into with Barnett.

About the time Barnett began operating the station, referred to by defendant as its Antler's Service Station No. 1, he discovered that the Wayne hydraulic lift, or jack, permanently installed in the station's lubrication room, and used to lift motor vehicles overhead to facilitate their greasing, as a part of the station's business, was defective, in that sometimes, a few minutes after a car or truck was raised to full height on it, the lift would suddenly drop, or recede into the floor again, to a distance of about 12 or 15 inches. This sudden lowering would bring the top of the jack, or its steel runners, upon which the wheels of the car stood, enough below the level, or top, of an average man's head, to strike it, if he was standing upright under it.

Soon after he began operating the station, Barnett complained about the defective hoist to Milton L. Stevenson, one of defendant's district salesmen, residing at Hugo, but selling defendant's merchandise in several counties, around Antlers, in southeastern Oklahoma. His duties included assisting dealers, or operators of so-called "Skelly" stations, in their selling of defendant's merchandise in that area.

On one of Stevenson's calls at the subject station, during the early part of August (either the 7th, 8th or 9th), 1958, Barnett accompanied Stevenson into the station's lubrication room, pressed the button, or lever, raising the defective hoist, and Stevenson watched it thereafter drop, as Barnett had represented to him it would. After this demonstration, Stevenson telephoned from Antlers to defendant's office in Tulsa, and told a Mr. George Alverson, in defendant's equipment department, about the hoist. Mr. Alverson told Stevenson that, from what he had related over the telephone, it sounded like the hoist had air under its oil (hydraulic fluid). Alverson suggested to Stevenson that he might find a set screw (on the hoist) by which he could "relieve that condition * * *". Stevenson then went back to the hoist, but was unable to find such a set screw. The same week, or on August 13, 1958, Stevenson wrote into a report he mailed to Alverson the following:

"In connection with our conversation of this week concerning several * * * jobs that are needed in that area. They are as follows:

"1. The Wayne lift at our Antlers, Oklahoma SS #1 is not working properly. When lowering the lift it often drops suddenly 12″ to 15″. I checked

the oil level, but it was full. I was unable to find the *set screw* you mentioned to bleed any air that might have been in the oil chamber. * * *."

Thereafter, defendant in error, a service station attendant, employed by Barnett, was greasing an automobile, suspended above him on the hoist, when it suddenly dropped, as above described, striking him on the head, knocking him down on the concrete floor, and inflicting certain serious and permanent personal injuries, unnecessary to detail.

After he had summoned an ambulance, which took plaintiff to the hospital, Barnett telephoned Stevenson, apparently at his home in Hugo, and informed him of the accident. Stevenson then went to Antlers, took with him a carbon copy of the above quoted report, and showed it to Barnett when he arrived at the station. Later Stevenson, telephoned a Mr. Weaver, in the service station equipment sales and service business at McAlester, and engaged him to go to Antlers and fix the lift. After Weaver did this, he mailed defendant a bill for the job, and defendant paid it.

Thereafter, in the present action, by which defendant in error, as plaintiff, sought to recover from defendant, damages on account of his said injuries, the trial court overruled defendant's motion for a directed verdict and submitted the case to the jury, which returned a verdict in plaintiff's favor. After entry of judgment in accord with the verdict and the overruling of defendant's motion for a new trial, it perfected the present appeal. Our continued reference to the parties will be by their trial court designations.

Both of the propositions defendant urges for reversal relate to the trial court's alleged error in overruling its motion for a directed verdict. Under its Proposition 1, defendant urges:

"(A) A landlord who leases a building for business purposes, in the absence of a contract, is under no obligation to keep the premises in repair and is not liable for an injury to an employee of the tenant caused by said defects.

"(B) As the lessee-operator of the service station was aware of the defective condition of the lift, his employee, plaintiff cannot recover against Skelly."

As a preliminary to its argument under (A) above, defendant concedes, as a fact, an important circumstance the lessee-operator, Barnett, testified to at the trial, namely: That when he demonstrated the defective operation of the hoist, about two weeks before the accident occurred, as aforesaid, Stevenson promised that he would get it fixed. (In view of the evidence as a whole, Stevenson's promise can only be interpreted as an undertaking to repair, on the part of his employer, the defendant). Defendant quotes from Wick v. Wasson, 193 Okl. 209, 142 P.2d 124, however, to show that, as between a landlord and tenant, there is a distinction between the landlord's negligent performance of a covenant to repair, and a complete failure to perform such a covenant. As American Jurisprudence (Vol. 32, "Landlord And Tenant", sec. 679) expresses it: " * * * a distinction is made by the authorities between nonfeasance and misfeasance of the landlord." The rule as stated in Restatement of The Law, Torts, Vol. 2, sec. 362, is in part as follows:

"A lessor of land who, by purporting to make repairs thereon while the land is in the possession of his lessee * * *, as the lessee neither knows nor should know, made the land more dangerous for use, is subject to liability for bodily harm caused thereby to the lessee and others upon the land with the consent of the lessee or a sublessee. Comment:

* * * * * *

"c. The lessor is subject to liability, if, but only if, the lessee neither knows nor should know that the purported repairs have not been made * * *, and so, relying upon the deceptive appearance of safety * * *

permits his licensees to encounter them."

■ Assuming, without deciding, (as defendant argues) that what Stevenson personally did to the hoist (as above described) could not be deemed the making of repairs on it, there can be no doubt that he undertook, on the part of his employer, the defendant, to repair it. Nor can it be doubted that if one undertakes to make a repair, and ostensibly commences, or enters upon, the performance of such undertaking, but does not carry it out, yet those who are to use the subject of the undertaking, do not know this, and, under the misapprehension that it has been fixed, proceed to use it, with the false sense of security and lack, or abandonment, of precautions, or watchfulness, produced by such ignorance, then the hazard, or danger, in the situation is increased. As the annotator states at 150 A.L.R. 1379: "The basis of the liability of a landlord for negligence in making repairs * * * is generally considered to be the reliance placed upon such conduct or the confidence induced thereby." And, there should be responsibility for causing such reliance (if reasonably prudent under the circumstances) whether the property involved be a permanent fixture and part of leased real estate, or merely personal property, such as a chattel. As to the latter, such responsibility is a recognized exception to a bailor's non-liability. As stated in 6 Am.Jur., "Bailments", section 316, the rule is as follows:

"A bailor is generally held not liable for injuries resulting to a third person from a defective condition of the subject of the bailment arising subsequent to the delivery thereof to the bailee, *unless he has assumed the responsibility of keeping it in repair, in which case he may incur liability for a failure to use proper care to remedy or give warning of such defective condition after having received or become chargeable with notice thereof.*" (Emphasis ours.)

In this connection, see Nesmith v. Magnolia Petroleum Co. (Tex.Civ.App.), 82 S.W.2d 721 and other cases discussed in the annotations to Moore v. City of Ardmore, 188 Okl. 74, 106 P.2d 515, beginning at 131 A.L.R. 845. See also Roosth & Genecov Co. v. White, 152 Tex. 619, 262 S.W.2d 99, Geffrey v. Langston Construction Co., Fla., 58 So.2d 698, and other cases annotated, beginning at 46 A.L.R.2d 404, and 68 A.L.R.2d 850. See also Restatement Of The Law, "Torts", Vol. 2, sec. 393.

■ In the present case, defendant was more than an ordinary landlord. Here the sub-lessor was paid by Barnett, as rental on the service station premises, 1¢ per gallon of gasoline sold there, in addition to the cash monthly rental provided in the lease. Defendant had a direct business, or pecuniary, interest, not only in the gasoline pumps on the premises, but also in furnishing Barnett any other equipment, or service, such a lubricating facilities, that would reasonably induce increased gasoline sales. (Defendant's concession, in its Reply Brief, that a service station "naturally includes a lubrication room * * *" renders it unnecessary to belabor this point). On the subject under discussion, it was said in Louisiana Oil Corp. v. Rayner, 159 Miss. 783, 132 So. 739:

"We are of opinion that it is entirely immaterial, under the facts of this particular case, whether the filling station is real estate or personal property. This case is one of its own kind—this is not the ordinary lease contract between landlord and tenant. Appellant was more than a mere landlord, and appellee more than a mere tenant. It is true that the lease contract provided that appellee should pay appellant a monthly rental of $25 for the filling station; but that was not all the consideration moving to appellant. Under the terms of the contract, appellant and the appellee entered into business together, although they were not partners in the legal sense; it was a joint

business, in which they were jointly interested."

The record does not unequivocally resolve the question of whether or not the lessee-operator, Barnett, "was aware" (to use the expression in part "(B)" of the defendant's argument) at any time before the accident, that Stevenson had been unable to find the set screw and to remedy the defect in the lift's operation, as suggested to him by Alverson in their long distance telephone conversation. The evidence does not disclose whether Barnett, or anyone else, was at the station, while Stevenson was looking for the set screw, or whether anyone was there between then, and the time Stevenson departed to continue his "rounds" of calling upon Skelly dealers in that territory. Barnett testified, however, that Stevenson never told him not to use the lift. The only evidence in the record as to whether or not plaintiff was ever apprised that the lift was defective is contained in Barnett's testimony that plaintiff started his employment at the station on Monday of the same week the accident occurred. (Monday fell on August 18th during that week of 1958). Whether or not plaintiff had occasion to use, or observe, the lift while it was operating defectively during the four days of his employment prior to the accident, does not appear. When Barnett was interrogated in relation to this subject, he testified:

"Q This hoist did not do that (drop) every time?

"A No.

"Q Just occasionally?

"A Occasionally.

"Q When Mr. Darling started to work did you warn him about the condition of the hoist?

"A As far as I know, I did not.

"Q So far as you know, when he started to work did he know about the condition of the hoist?

"A No. * * *."

In view of the above, and of the evidence from which the jury might have concluded that the defendant had undertaken to keep in repair all of the equipment leased to Barnett with the service station building, and had retained control of the premises sufficient for that purpose, we are of the opinion that it was for the jury to determine whether defendant, after assuming such responsibility, was negligent in discharging it, or—to paraphrase the hereinbefore quoted rule—whether defendant was negligent in failing, after learning of the defect, and attempting to, but being unsuccessful in, remedying it, to warn, or give notice, that it had not—that the lift was still defective. In this connection, see the discussions in Miller v. Morse, 9 A.D.2d 188, 192 N.Y.S.2d 571, app. den. 10 A.D.2d 589, 195 N.Y.S.2d 398, DeClara v. Barber Steamship Lines, 309 N.Y. 620, 132 N.E.2d 871, 875–877, and other cases cited in the annotations beginning at 78 A.L.R.2d 1238. It therefore follows that if the jury concluded from the evidence that defendant was negligent in failing to do one of those things within a reasonable time (see Napier v. Pool, 39 Ga.App. 187, 146 S.E. 783, 786), then the verdict for plaintiff was justified.

Nor can we agree with defendant's contention (under its "(B)", supra) that the defect in the lift was necessarily a patent one. On the basis of the evidence, we think this question was partially, at least, a question of fact (as distinguished from a pure question of law) and was also for the jury to determine, under proper instructions.

This case is not in the same category as Wick v. Wasson, supra, and our holding therein is not applicable hereto. We also think this case is distinguishable from D-X Sunray Oil Co. v. Billue, Okl., 361 P.2d 212 (cited in defendant's reply brief) where the evidence did not establish, as here, that the defendant agreed, or undertook, to repair the equipment involved. (See p. 214 of 361 P.2d). Furthermore, the differences between the facts in this case and those in Magnolia Petroleum Co. v. Angelly, Okl., 306 P.2d 309, render the defendant no less liable here than was the

defendant there. Under the principles hereinbefore referred to, it is immaterial that defendant did not produce the defect in the lift. Defendant, being more than a mere landlord in its relation to the premises, and having undertaken the duty of repairing the lift, it was its duty to do so, without negligence, or negligent delay, whether it had in any way caused the defect, or not.

As we have found in the arguments of defendant insufficient ground for reversing the judgment of the trial court, the same is hereby affirmed.

WILLIAMS, C. J., and DAVISON, JOHNSON, and JACKSON, concur.

IRWIN, BERRY and HALLEY, JJ., dissent.