## MOORE v. CITY OF ARDMORE.

No. 29519. Oct. 15, 1940.

*106 P. 2d 515.*

Herbert K. Hyde and W. P. Morrison, both of Oklahoma City (Albert D. Lynn, of Oklahoma City, of counsel), for plaintiff in error.

J. B. Moore, of Ardmore, for defendant in error.

BAYLESS, C. J. Mrs. H. A. Moore, widow of H. A. Moore, deceased, brought an action in the district court of Carter county, Okla., against city of Ardmore, a municipal corporation, to recover damages for the death of her husband occasioned, as she alleges, by drowning in a lake owned by the city as the result of an unsuitable and unsafe boat rented by the city to the deceased. The trial judge sustained a demurrer to the plaintiff's evidence, and she appeals.

Moore and Wright paid the city a fee to fish in the lake, and hired a boat, which will be described later, to use for fishing in the lake. They fished from the boat until noon, when they returned to shore and rested awhile. Later they employed a negro to accompany them, and paid the city an additional fee for the privilege of the negro to fish. The three got into the boat and fished in the lake for some hours. Late in the afternoon a storm came down suddenly, the high wind raised large waves, and while the men were trying to get the boat to shore, it capsized and Moore drowned.

Plaintiff relied on several omissions on the part of the city as constituting acts of negligence, to wit: (1) The boat

was not properly constructed with respect to its design and dimensions and was unsafe or unseaworthy; (2) the boat was not equipped with air chambers to insure its buoyancy; (3) the boat was not equipped with life preservers; and (4) no patrol or lookout was maintained to rescue those who might be capsized into the lake.

Plaintiff discusses the duties the city is said to have owed to Moore under two heads, viz.:

"1. Was it the duty of the defendant to maintain and have available for immediate use in case of emergencies a suitable employee or person supplied and equipped with suitable and sufficient motor boat or other means adequate for use in rescuing persons who had obtained fishing permits and rented boats from it, and were out on the lake and in danger from sudden storms or other perils?

"2. Was it the duty of the defendant to have the boats which it kept at the lake to rent to persons desiring to use same for fishing or other permitted uses on the lake equipped with air chambers sufficient to insure buoyancy of such boats and passengers in the event the boat capsized from sudden storms or any other cause?"

We will take these up in their order.

The duty to have means of rescue for those who have the misfortune to be cast into water and to be in danger of drowning may be ever so desirable as a humanitarian principle, but we are convinced it is not a legal duty in a case such as this. We said in City of Tulsa v. Harman, 148 Okla. 117, 299 P. 462, that an invitee assumes all of the ordinary risks attendant upon the use of the premises, meaning thereby that the inviter does not owe him a duty to protect him therefrom. In that case the city of Tulsa contracted to convey deceased over water at a flood stage. Obviously the risks were greater than when at a normal stage. The invitee assumes the risks attendant upon the venture into which he enters. It would be illogical to say that the inviter owed the invitee the duty to provide means of rescue from extraordinary risks that

come from unusual or uncontrollable sources. Storms affecting the safety of those on water are not unusual in one sense because they have happened, but the risk thereof is unusual in the sense that they are not usually contemplated as affecting the contractual relations of the parties. In effect, it would be requiring the inviter to become an insurer against an act of God.

An adult person who enters into a boat and ventures upon water undoubtedly has enough discretion to realize the elements of danger involved, not only from the forces of nature operating in ordinarily peaceful character but also from the forces of nature in extraordinary manifestations over which he nor any other person has control. As pointed out in Osterlind v. Hill, 263 Mass. 73, 160 N. E. 301, 56 A. L. R. 1123, citing 20 R. C. L. 9-10, and other authorities, one is under no legal duty to respond to cries for help from one clinging to a canoe in deep water. We can think of no legal argument, and plaintiff makes none, that will support this contention. The statement of the contention limits its application to instances of peril from "sudden storm or other perils." We hold that there is no such duty.

With respect to the second question, three arguments are made. The first relates to the "unsafe as constructed" condition of the boat.

The evidence shows that it was 14 feet long, had a metal bottom and wood sides, with a seat in each end and one in the center. It was about 12 inches deep, 33 inches wide at the bottom and 39 inches wide at the top. The evidence shows it had no air chambers or life preservers. Plaintiff introduced an experienced boat maker who testified that a boat 14 feet long should be 15 or 16 inches deep, 42 inches wide at the bottom and 52 inches wide at the top. He testified a wide flare (that is, the increase of the width at the top over the width of the bottom) is a prime factor of safety against capsizing, and in his opinion the dimensions of the boat involved did not permit of sufficient flare

to give adequate safety against capsizing in rough water such as capsized the boat.

Plaintiff cites and relies upon Lakeview, Inc., v. Davidson, 166 Okla. 171, 26 P. 2d 760, which states, upon authority of 45 C. J. 816-858, the owner of a place of amusement owes the invitees the duty of keeping the appliances and equipment in a reasonably safe condition. We have no criticism to make of such rule. We are of the opinion that such rule is a corollary of the rule of the implied warranty of fitness found in the law of bailments, which we feel is applicable to this case. We do not find enough analogy in the case supra to the case at bar to be of much benefit. In that case the applicable city ordinances required the boats used to meet certain standards of safety and the corporation contracted with the city of Oklahoma City to meet those standards; and we feel that the duty raised by contract governed rather than the duty raised by the general law. As pointed out in 6 Am. Jur. 283, § 188, the duty owed by common law may be raised or lowered by contract.

In 6 Am. Jur. 284, § 189 et seq., is stated the general rule with respect to the duty owing by a bailor to the bailee, and the exceptions thereto, and the difference in duty owed by a gratuitous bailor and a bailor for hire. Since we have before us a bailment for hire, we are of the opinion we should address our consideration to that point. We find the general statement of the minimum duty owing by a gratuitous bailor, but that the duty owing by a bailor for hire is higher. This difference is said to be fundamental and generally recognized. It is said to be justified by the mutual benefits arising from the letting and the fee therefor. With respect to the bailor for hire, the rule is he owes the bailee the duty to deliver the bailed chattel "in a proper condition to be used as contemplated by the parties." The authorities are agreed that the bailor for hire is not an insurer of the safety of the bailee from injuries from the use of the chattel. But the bailor for hire is

required to use a high degree of care to know the condition of the chattel where he knows the general purpose for which it is to be used.

Many of the cases cited relate to chattels of a complex mechanical nature, and to livery stable keepers, and the like. 6 Am. Jur. 288, notes 16 and 17.

It is to be observed that what is ordinary or due care, even of the high degree imposed upon a bailor for hire, depends upon the circumstances of each case and varies with the type of chattel bailed and the ordinary uses to which it may be put. The problem of the courts in each case is to state and apply a reasonable rule that will prevent a bailor for hire letting chattels for use in indifference to the suitability and safety to the bailee, and, also, will not serve to protect a bailee who relies upon the implied warranty to the extent of being indifferent and heedless of his own safety. He is not to be permitted to impose upon the bailor by assuming too great protection instead of the reasonable protection the law requires the bailor to give. Neither of the parties to a bailment for hire should be permitted to substitute a supposed legal rule for their own faculties.

As suggested in the annotations in 12 A. L. R. 774, and 61 A. L. R. 1336, the implied warranty must be taken and understood in a reasonable sense. The implied warranty relates to suitability for the intended use, and the safety inherent in the ordinary use thereof. It is not a broad, absolute warranty, but one that will reasonably serve the particular case. If the bailed chattel is reasonably suitable for the designed use, and is free of observable defects, it seems to be difficult to require more. To require it to be suitable and safe to the extent of covering every contingency that might arise is to make the burden too great, even for a bailor for hire.

6 Am. Jur. 290, § 197, discusses the circumstances whereunder a bailor for hire may be relieved of his liability, or at least his situation ameliorated. The

net of the discussion is that the freedom of a gratuitous bailor from liability where the bailee has an opportunity for observation and inspection is carried over to the bailor for hire, perhaps to a lesser degree. In other words, making due allowance for superior knowledge of boats possessed by a lessor thereof over the lessee, it nevertheless seems reasonably certain that the observation that would lead a reasonable man to realize that a boat's dimensions and lines are such that it is unsuitable or unsafe would apply as much to the lessee as the lessor. If it is a matter of judgment, unaffected by knowledge of previous conditions, then the judgment that would permit reasonable men to say the lessor had not observed the implied warranty would also cause them to say that the lessee had not used his faculties as a reasonable man. Unless it be shown that the lessor had knowledge of the unsuitability of a boat, or its unsafe condition, from previous use, the reasonable judgment of lessor and lessee is to be governed within the same general lines. The boat in question varied from what an experienced boat builder considered proper. Yet it must be assumed that the builder of the particular boat must have considered it reasonably proper, and it is not shown that previous use had given rise to apprehension that its lines and dimensions were improper to the point of amounting to a breach of the duty the city owed to prospective lessees of the boat. If the lack of suitability and safety of the particular boat for use as a fishing boat is to rest upon expert opinion, we are of the opinion that the proper standard of suitability and safety should be established within such reasonable bounds that any deviation therefrom would be reasonably apparent to a reasonable man upon inspection or observation. It is a matter of common knowledge that there are many types of boats, and that boats of the given type vary greatly in their design, dimensions, etc.

Considering all of these factors, it would be a harsh rule to hold a bailor for hire guilty of the breach of the duty owing to the bailee, where the determination of the breach must be judged entirely by expert testimony and not by the judgment of reasonable men based upon observation or inspection.

We are of the opinion that the same is true with respect to the other two charges of negligence, which are based on the omission to equip the boat with air chambers to insure buoyancy in the event the boat capsized, and to equip it with life preservers for use in the same event.

Considering the likelihood of any boat capsizing for any number of reasons unaffected by unusual or unfavorable acts of nature, it seems that almost no reasonable person ventures upon water in a boat without some apprehension of danger. If it can be said that a reasonable man would not expect, in the course of hiring a boat for use in fishing, to observe the absence of air chambers on the boat and the omission to furnish him with life preservers, it seems harsh to hold that the bailor breached a duty toward him in failing to equip his boat with air chambers and life preservers. As said in 6 Am. Jur. 288, note 19, the implied warranty is to be extended only to elements and conditions from which injury does not ordinarily occur unless the bailor has been negligent in his duty toward the bailee. The bailor of a boat cannot be held to impliedly warrant that his boat is so built and equipped that the lives of those using it will be preserved in all of the situations that arise from the use of it.

The only case closely analogous, we find, is that of Clark v. Detroit & M. Ry. Co., 197 Mich. 489, 163 N. W. 964, L. R. A. 1917F, 851, Ann. Cas. 1918E, 1068, which is cited in 6 Am. Jur. 289, note 1, and in 8 C. J. S. 258, § 25, note 42. In so many words, it is held therein that the bailor for hire of a rowboat is not bound to furnish a boat that will float and sustain the passengers when capsized.

Judgment sustained.

WELCH, RILEY, GIBSON, and DAVISON, JJ., concur.