John L. MOORE and H. R. Wardlaw, d/b/a Red Town Farm, et al., Appellants,

v.

Harold ELLIS, a Minor, by Next Friend, A. G. Ellis, et al., Appellees.

No. 84.

Court of Civil Appeals of Texas.

Tyler.

Dec. 3, 1964.

Rehearing Denied Dec. 31, 1964.

Donald Carroll, Ramey, Brelsford, Hull & Flock, Tyler, Luther Johnston, Johnston & Johnston, Palestine, for appellants.

George E. Pletcher, Helm, Jones & Pletcher, Houston, John B. McDonald, B. R. Reeves, Palestine, for appellees.

DUNAGAN, Chief Justice.

This was a suit for damages for personal injuries sustained by the plaintiff, Harold Ellis, which were alleged to have occurred as the result of the negligence of the defendants. A jury verdict based on special issue findings was returned for the plaintiffs in the amount of $126,500.00, and judgment was entered thereon. Appellants duly filed their Amended Motion for a New Trial, which was timely overruled and an appeal therefrom was duly prosecuted to this court.

The plaintiffs through their pleadings alleged in substance that the minor plaintiff, Harold Ellis, on or about June 20, 1962, was operating an International-Harvester Farm-All 300 tractor owned by defendants, John I. Moore and H. R. Wardlaw, d/b/a Red Town Farm, which was in a defective condition and which defective condition was known to the defendants in that the hydraulic cylinder lift used to raise and lower the disc was not operating properly and was in a poor state of repair and dangerous to use on wet, muddy ground; that defendants were negligent in permitting the minor plaintiff to operate the tractor in question without giving proper instructions as to its use, and in permitting the discing operations by him at a time when the field in question was muddy, causing the disc to ball up; and failing to warn the minor plaintiff of the danger in operating the tractor with the defect under conditions which defendants knew or in the exercise of ordinary care should have known would cause the occurrence that did occur. The defendants by their pleadings raised the defenses of no duty, assumed risk and the doctrine of Volenti Non Fit Injuria.

Appellants have presented their Points of Error in groups. The first group of points comprises Points 1 through 9, inclusive. In substance, they are that the defendants' Motions for Instructed Verdict and Non Obstante Veredicto should have been granted in that plaintiffs had wholly failed to make out a case against the defendants in that they had failed to (1) establish a duty, which (2) was breached, and (3) proximately caused the incident in question.

Harold Ellis, a 16 year old farm boy, was hired as a farm hand by T. L. Harper, a tenant farmer who leased land owned by the defendants Moore and Wardlaw. Harold's father worked for Harper as a farm hand and secured the job from Harper for Harold. On or about June 19, 1962, Harper took Harold Ellis to the headquarters of Red Town Farm to get a certain tractor belonging to Red Town which Harper wanted Harold to use in discing turn rows on the land Harper was farming under the lease from Red Town. Harper pointed out this particular tractor to Harold for him to use in discing. At Harper's instance and request, Harold took the tractor and after hooking the disc to it proceeded to do the discing for Harper for which he was hired. At the time Harold got the tractor, the foreman of Red Town, L. D. McCrary, was not present and did not know that Harold was going to use the tractor.

The tractor was equipped with a cylinder lift and a three point hitch lift. The cylinder lift was inoperable by reason of the lack of the handle which was necessary to operate same. The cylinder lift was designed to lift the disc out of the ground. If functioning properly, when the disc was lifted from the ground the wheels of the disc would remain on the ground, the force of the weight would be applied to the wheels on the disc. The use of the cylinder lift would push the disc up out of the ground so it could be cleaned or unclogged. There were only two ways to lift the disc from the ground and thereby remove the mound of soil that was built up in front of it.

One by the use of the cylinder lift which was inoperable, and the other by the use of the three point hitch. Each of the operations were shown to be entirely separate and distinct methods of raising the disc. In the use of the three point hitch, the force is applied to the drawbar of the tractor and if the disc is overloaded it would cause the front end of the tractor to raise up. Upon disengaging the clutch or releasing the gas throttle, the front of the tractor would come down.

On the occasion in question, it was shown that some portion of the ground being disced was wet causing the dirt to ball up in front of the disc. To relieve this condition Harold used the three point hitch. In doing so, three times prior to the accident, twice on the day before the accident, he testified that the tractor reared up. One time he disengaged the clutch and the tractor lowered itself to the ground.

Harold testified that while he was discing, he tried to use the hydraulic cylinder lift and that it would not work and that during the morning of the 19th of June, McCrary came by where Harold was discing and told him that it (cylinder lift) would not work. However, after being so informed by McCrary he voluntarily proceeded to use the tractor in the defective condition.

The fourth time the tractor reared up, it flipped over backwards, pinning Harold underneath and causing hot oil from the crank case to spill over his face and body.

A brief summary of the findings of the jury in answer to special issues submitted to them is: (1) the minor plaintiff was negligently permitted to use the tractor in question at a time when the cylinder lift was in a known defective condition; such defect proximately caused the tractor to upset and this was known or should have been known by defendants; (2) the defendants' failure to warn the minor plaintiff of this danger was negligence and a proximate cause of the occurrence; (3) the defendants negligently failed to give the minor plaintiff proper instructions as to the manner of operation of the tractor and this was the proximate cause of the occurrence in question; (4) the operation of the tractor under the circumstances was such as to create a danger to the minor plaintiff; (5) the condition of the tractor was such as to create a danger to the minor plaintiff; (6) the condition of the tractor was not as open and obvious to the minor plaintiff as it was to the defendant McCrary; (7) the minor plaintiff did not fully realize and appreciate the danger nor should he have known or realized such danger; (8) he did not voluntarily expose himself to such danger. The jury likewise absolved the minor plaintiff of any contributory negligence.

In disposing of the first group of points we are concerned only with the duty owed by the defendants to plaintiff, Harold Ellis.

■ In order to determine what duties are required by law of the defendants, it is elementary that some legal relationship must be established. Houston Lighting & Power Company v. Brooks, 161 Tex. 32, 336 S.W.2d 603 (1960).

■ The record establishes without dispute that the relationship of the parties herein is that of bailor-bailee, although there is no jury finding to this effect.

■ It has been established in this state that this court can consider a case in the light of a relationship which is indisputably established by the record, even though there is no jury finding thereon. Cotterly v. Muirhead, Tex.Civ.App.1951, 244 S.W.2d 920 (writ ref., n. r. e.). As we view the situation before us, the question which is here presented is whether the defendants breached a duty owed by a bailor to a bailee, or one standing in the place of the bailee, or whether, as a matter of law from the undisputed evidence, all duties owed by the defendants were performed, thereby absolving them from any liability in this matter.

The appellants contend that the bailment was gratuitous. It is the contention of

the appellees that the bailment was for mutual benefit. McCrary testified that the tractor was loaned to Harper. T. L. Harper was not made a party to this lawsuit. Neither was he called by either party to testify on the trial of this cause.

The law of Texas and the other jurisdictions of the United States makes a distinction in the duty owed by different types of bailor to their bailee. Irrespective of whether it be a gratuitous bailor, a bailor for mutual benefit, or bailor for hire, there is no duty to act if the bailee knows of the defect. If the bailee does not know of the defect, there is no duty other than informing him of such defect. This is expressed in 8 Tex.Jur.2d, 244, Bailments, Section 19, where it is stated:

"In general; For injuries caused by dangerous or defective condition of property bailed.

"Although a bailor for hire is not an insurer of the fitness of the subject of the bailment, he is liable for personal injuries to, or the death of, the bailee or third persons proximately resulting from the dangerous or defective condition of the chattel while it is being used for the purpose known by the bailor to be intended, where the bailor has not used reasonable care to see that the chattel, as of the time of its letting, was free from any defects or weakness rendering it unfit for its known use, *unless the defect was known* or was obvious to the person injured or killed so that that person could have avoided injury." (Emphasis added).

In the case of Nesmith v. Magnolia Petroleum Co., Tex.Civ.App.1935, 82 S.W.2d 721 (no writ history), the court said:

" 'One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should ex-

pect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to *inform* them of its dangerous condition or of the facts which make it likely to be so.' These general principles apply alike to donors, lenders, and lessors of chattels. * * *" (Emphasis added).

Therefore, all three of the above elements must exist concurrently before liability can be assessed against the defendants.

In the case at bar it is undisputed that Harold Ellis knew of the inoperable cylinder lift, and it is further undisputed that McCrary told Harold Ellis about the inoperable cylinder lift. Furthermore, the jury found that at the time and on the occasion in question, Harold Ellis knew that the cylinder lift was not in operating condition. Therefore, elements (b) and (c) did not exist, but, rather, the evidence showed that the duty imposed was fulfilled and not breached.

The Supreme Court of Missouri in the case of Blankenship v. St. Joseph Fuel Oil & Mfg. Co., 360 Mo. 1171, 232 S.W.2d 954, stated:

" 'Generally speaking, a bailor is not liable to third persons for injuries from patent defects in the bailed article * * *.' 6 Am.Jur. 415, § 316, n. 17. Where the defect is *known* to or readily ascertainable by the bailee, there is no duty to the bailor to notify him as such notice would not be neces-

sary for his protection. * * *"
(Emphasis added).

In the case of Lackey v. Perry, Tex. Civ.App.1963, 366 S.W.2d 91 (no writ history), the court held:

"* * * Although the rule in this State is that a bailor for hire is not an insurer of the fitness of the subject of the bailment, he is liable for personal injuries to, or the death of, the bailee or third persons proximately resulting from the dangerous or defective condition of the chattel while it is being used for the purpose known by the bailor to be intended, where the bailor has not used reasonable care to see that the chattel, as of the time of its letting, was free from any defects or weakness rendering it unfit for its known use, *unless the defect was known* or was obvious to the person injured or killed so that the person could have avoided injury. * * *" (Emphasis added). Citing as authorities for this holding Nesmith v. Magnolia Petroleum Company, supra, and Brown v. Hudson, 50 Tenn.App. 658, 363 S.W.2d 505 (1962).

In 8 Am.Jur.2d 1047, Bailments, Section 154, it is stated that if the bailee has *knowledge* of the defect and uses the thing notwithstanding this *knowledge*, he will be held to have waived his right to claim damages.

■ The rule appears to be general and firmly established that where a bailee-plaintiff voluntarily continues to use a defective machine after knowledge of the defect, he cannot recover for injuries resulting from such defect. Runnels v. Dixie Drive-It-Yourself System, Jackson Company, Inc., 220 Miss. 678, 71 So.2d 453, 46 A.L.R.2d 397.

For additional authorities see: Moore v. City of Ardmore, 188 Okl. 74, 106 P.2d 515, 131 A.L.R. 841, 845, 853 (Oklahoma S.Ct., 1940); Prosser on Torts, 2d Ed., page 512.

There is no contention made that the tractor was upset by the use of the defective cylinder lift or by any malfunction thereof. There was no issue requested or submitted nor was there a jury finding as to whether the defect itself was a proximate cause of the injury. Neither do the appellees contend that the three point hitch lift was defective or it was a dangerous instrumentality when properly used.

■ The appellees contend that appellant McCrary was negligent in permitting Harold Ellis to operate the tractor when he (McCrary) knew it was in a defective condition; that such defective condition made it necessary to resort to the use of the three point hitch to lift the disc from the ground; that the use of the three point hitch was dangerous when the ground was wet; that appellant McCrary was negligent in not warning Harold Ellis of the danger involved; and not instructing him in the proper use thereof, all of which was a proximate cause of said accident.

Appellees further contend that a duty existed to not only inform the bailee of the defect, but to anticipate and disclose all of the possible danger that might be encountered in using the three point hitch and further give to him instructions how to operate the tractor in its present condition with safety to him.

Appellees have cited no authority sustaining this contention nor have we been able to find any in our research.

Under the record in this case to sustain the contention of appellees would be extending the legal duty owed by bailor to bailee or those standing in for bailee, beyond that which has heretofore been established by the courts in this or other jurisdictions insofar as we have been able to ascertain. Under our view of the record in this case, we conclude that defendants-appellants' respective Motions for Instructed Verdict and with judgment Non Obstante Veredicto should have been granted for the reasons herein stated.

In view of our disposition of this case raised by Points 1 to 9, inclusive, it is unnecessary for us to dispose of other Points of Error presented by the appellants.

Judgment reversed and rendered.