**DELHI–TAYLOR OIL CORPORATION, Appellant,**

v.

**Will Ray HENRY, Appellee.**

No. 125.

Court of Civil Appeals of Texas.

Corpus Christi.

May 12, 1966.

Rehearing Denied June 9, 1966.

James C. Watson, of Keys, Russell, Watson & Seaman, Corpus Christi, for appellant.

Fred C. Auforth, Hubert L. Stone, Jr., Corpus Christi, for appellee.

## OPINION

NYE, Justice.

This is a personal injury suit. Will Ray Henry, the appellee, brought suit against Delhi-Taylor Oil Corporation to recover damages for extensive burns received by him while working as a welder on the premises then under the control of Delhi-Taylor Oil Corporation, the appellant here.

The case was tried to a jury, and in response to the answers of special issues, judgment was entered in favor of Henry for the sum of $105,306.52. The Hartford Accident and Indemnity Company, one of the appellees, the workmen's compensation insurer for the employer of Henry, intervened to recover the sum of $32,986.52 to which it was subrogated. Its appearance was only for the court and was not shown to the jury.

Delhi-Taylor Oil Corporation, the appellant, engaged Roy Vickers Lease Service to do some rather extensive work on its pipelines running from its refinery in Corpus Christi to the docks on the ship channel at the Port of Corpus Christi. The appellant owned and operated sixteen pipelines which carried various hydrocarbon products from the refinery to the port. These dock loading lines ran generally downhill from the refinery to the port and across property owned by Columbia Southern Corporation from whom appellant had obtained an easement of right-of-way. Columbia Southern had decided to widen its entrance roadway which crossed at right angle to these pipelines. Under the provisions of the easement agreement, Columbia Southern notified appellant that it must extend the casings around each of the pipelines so that road material could be placed on top of the pipes and the road widened at that point. These sixteen pipelines had been installed periodically by the appellant over the past thirty years as the need demanded. The lines varied from two inches to sixteen inches in diameter and were buried in the ground at depths varying from four inches to ten feet.

The particular job that the appellant was undertaking called for extending the casings (simply placing a larger pipe around each pipeline so that any of the pipelines could be removed thereafter at any time from under the road without disturbing the road material) as a part of phase one of this job. Phase two of the job was the cutting and lowering of all of the pipelines to a particular uniform depth. This second operation required that all the lines be drained and emptied.

Appellant hired Vickers to do the work on a labor and equipment rental basis. This was required by the appellant because it was most difficult to ascertain in advance the exact type of work that needed to be performed because of the age and condition of some of the pipelines. Some of the pipelines had corroded and would be in need of welding repairs, doping and wrapping

before they were put finally at rest underneath the road. No one knew how much work would be required. Vickers submitted to appellant its standard printed rate schedule outlining the hourly rates for each man and the type of work they would perform and the various types of equipment proposed to be used on the job. Other than submitting the printed rate schedule to the appellant, the contract of employment was oral. It was understood that the appellant would furnish a construction superintendent who was to consult with and determine what repairs were to be made to the existing pipelines. He would represent the appellant at the jobsite and determine to his satisfaction the progress of the work. It was further understood that the contract of employment could be terminated at any time by the appellant's superintendent.

In addition to the casings for the sixteen dock loading lines, appellant had a large twenty-four inch casing in the easement and under the existing entrance roadway which had no pipelines running through it, as it was for future use only. This large two foot casing was buried approximately ten feet deep and was also to be extended by Vickers. It was necessary for a huge ditch to be excavated into which a casing extension would be lowered and welded to the existing casing. At first the ditch was being dug by a back-hoe (a tractor with a flexible digging arm) but it became obvious that this machine could not complete the job. Appellant's superintendent, Perkinson, directed Vickers to bring out a dragline to perform this excavation. The ditch was to be three feet or more wide, twenty-seven feet long, and approximately ten feet deep. The amount of dirt removed from the excavation was voluminous. Part of the dirt was placed on the side of the road and the rest of it in the easement which was an overburden on the existing pipelines in the easement.

After the ditch had been dug, a twenty-four inch casing pipe was lowered into the ditch by a special machine and held in place so that it could be welded onto existing casing under the road. Henry, the appellee, was an employee of Vickers and was ordered down into the ten foot hole to weld the two pieces of twenty-four inch pipe. Unknown to him, the dragline was moved around some twenty or thirty feet from the existing hole, to remove the pile of dirt overburdening the existing pipelines so that the next pipe could be uncovered and casing placed around it.

Mr. Perkinson, the appellant's superintendent, watched the dragline dig the large ditch and then move over and uncover the lines. He then left the jobsite to return a transit to his office. While Perkinson was gone the dragline operator continued to uncover the lines and as he was uncovering a second line, the teeth of the dragline bucket punctured a ten inch dock loading line containing liquid toluene under pressure. Toluene is a highly flammable hydrocarbon petroleum product described as being similar to gasoline and which is sometimes used as a blend to gasoline. The fluid toluene spirted up into the air, arched over and downwind some twenty feet and into the hole where the appellee Henry was welding, saturating his clothing. The toluene ignited from Henry's torch and the entire hole became a mass of flames, burning Henry over approximately eighty-five per cent of his body, with first, second and third degree burns. He was able to extricate himself from the hold and fellow workmen were able to tear off his clothes and put out the fire. As a result of his burns appellee Henry was in the hospital some three months, incurring medical expenses of approximately $20,000.00.

The toluene line which sloped from the refinery toward the dock was not under pump pressure at the time, but the line was full of toluene under static pressure, and possibly a slight pressure from thermal expansion. The static pressure was described as being the weight of the liquid in the pipeline from the point of puncture uphill to the refinery. It was likened to a barrel full of liquid with a hole punched in at the bottom. The weight of the liquid

would squirt the fluid out until it had drained down to the hole. As soon as the line drained to the point where the pipe was punctured, the toluene ceased to flow and the fire at the jobsite was quickly brought under control by fire-fighting equipment.

The work to be performed by Vickers and his employees was considered to be very hazardous. Both Mr. Wright, appellant's engineer in charge of contractual arrangements, and Perkinson, appellant's onsite superintendent, had considered the work as being hazardous. Perkinson had considered that one of the hazards was exactly what had happened on this occasion. He admitted that while he was supervising another pipeline job for the appellant's plant, some five years previous to this accident, a dragline bucket had punctured a pipeline. Both parties admit that Vickers and his personnel were business invitees.

Appellee Henry plead that defendant-appellant owed him a duty to provide him with a safe place to work; that appellant owed him a duty to inspect the premises and to warn such invitees at the jobsite of dangerous conditions discovered by such inspection, as well as dangerous conditions known to appellant by reason of its intimate knowledge of the pipelines from the date of their original installation to the time of the accident. Pleading further, appellee contended that the appellant owed said business invitees that additional duty to take such action to protect them from injuries as would have been taken by a reasonably prudent controller of the premises. Appellee Henry plead that the appellant knew that the pipeline which sprayed toluene on appellee Henry contained toluene under pressure, that the appellant knew that the dragline was being used to uncover pipelines and that such operations carried with it the risk of rupturing such pipes. Appellee Henry contended that appellant breached and violated the duty owed to the appellee. Among others, the appellee plead that the appellant breached and violated the duty to release the pressure on the toluene line before the dragline was used to uncover the same, and to inspect the toluene line to determine the amount of pressure therein before the dragline was used to uncover the same.

The defendant-appellant, Delhi-Taylor Oil Corporation, answered contending that it was guilty of no negligence and violated no duty to appellee Henry; that Vickers, appellee's employer, was an independent contractor, and knew of the method of doing the work and the work to be accomplished by the dragline, and was aware that there were numerous pipelines in the area transporting petroleum products which were highly inflammable; appellant denied that its job superintendent Perkinson was in control of the work and at no time intended to direct the detailed operations or methods in which the work was to be conducted. Appellant specifically denied that it owed any duty to Henry, the appellee, or to any other employees of Vickers to provide them with a safe place to work, as this was the obligation of Vickers only. Appellant plead further that the accident was not caused by any negligence or any breach of any duty on the part of appellant, but was solely caused by the acts or failure on the part of the dragline operator, the employee of Vickers. Pleading further, appellant answered that the injuries to Henry were the result of an unavoidable accident or were proximately caused by a new and intervening agency or a new and intervening cause so that if there was any negligence or breach of duty on the part of appellant, it constituted a mere prior or remote cause and that the acts and failure of the dragline operator constituted an immediate and producing cause of the injuries.

The jury, in answer to a number of special issues found: (1) That the defendant Delhi-Taylor Oil Corporation had the right to control the pressure in the toluene line on the occasion in question; (2) that Delhi-Taylor Oil Corporation failed to release the pressure on the toluene line before the dragline was used to uncover the same; (3) that that was negligence, (4) and a proximate cause of the injuries in question;

(5) that the appellant Delhi-Taylor Oil Corporation failed to inspect the toluene line to determine the amount of pressure therein before the dragline was used to uncover the same, (6) and that that was negligence, (7) and a proximate cause of the injuries in question. (8) The jury further found that appellant Delhi-Taylor Oil Corporation had the right to control which machines were to be used to uncover the toluene line; (9) that appellant did not direct Vickers' foreman to use the dragline to uncover the toluene line in question. (Special Issue No. 10 inquired as to whether Special Issue No. 9 was negligence; it was not answered and Special Issue No. 11 as to proximate cause being conditionally submitted, was also not answered). (12) The jury found that the toluene line was punctured by the dragline bucket being dropped on it; (13) they found that the dropping of the dragline bucket was not the sole proximate cause of the injuries to Will Ray Henry; (14) the injuries to Henry were not the result of an unavoidable accident; (15) that the damages sustained by Henry as a direct result of his injuries amounted to $85,000.00; (16) that the doctors, hospital, nursing, and other medical expenses incurred by Henry amounted to $19,806.52, and (17) future medical in the amount of $500.00.

The appellant did not plead the affirmative defense of volenti non fit injuria, nor did it plead that if it owed a duty to Henry, that it protected or warned. The appellant did not rely upon the common law issues of contributory negligence and proximate cause.

Prior to the commencement of the work, the appellant's engineer told Vickers and his foreman that all of the sixteen dock loading lines were to be considered as "loaded". Both parties agree that the condition of the premises and the dangers were not open and obvious of which invitees knew or of which they were charged with knowledge as a matter of law. It was also undisputed that there was no protection given to the business invitee or his servants of the dangers complained of.

Appellant's first point is that the trial court erred in entering judgment for appellee because under the facts of this case as a matter of law, appellant as an occupier of the premises owed no duty to appellee as an invitee on the premises, except to warn of existence of flammable materials in the pipelines, and this duty was discharged by the warning given by appellant to the employer, and the employer's superintendent, of appellee.

■ The occupier of land or premises is required to keep his land or premises in a reasonably safe condition for his invitees. This includes a duty of the occupier to inspect and discover dangerous conditions. Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853 (1950); Genell, Inc. v. Flynn, 163 Tex. 632, 358 S.W.2d 543 (1962). This duty on the part of the occupier of premises is to protect his invitees from dangers of which he, the occupier, knows, or because of his duty to inspect, of which he should know, in the exercise of ordinary care. " * * * If there are dangers which are not open and obvious, he is under a *duty* to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof. * * *" Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, at page 378 (Supreme Court 1963). In the "no duty" invitee cases the plaintiff must prove the existence of a duty on the part of the occupier and a breach of that duty. This burden is carried into the wording of the special issues. This duty of the occupier of the land or premises as to his invitees, is the duty to keep the premises in a reasonably safe condition. His duty is defined to require that he inspect the premises to discover defects and dangers. On the other hand the invitee may assume that the premises are in good condition. He is under no duty to inspect them for defects. The occupier has a duty to protect

his invitees from dangers of which he, the occupier, knows or which because of his duty to inspect, he should know. If the premises are unsafe, the duty of the occupier is to warn or protect the invitee. For if the premises are unsafe and the danger is not open and obvious, how can the plaintiff know and appreciate the danger if he is not warned? If, however, after being warned, the invitee nevertheless proceeds to encounter the danger, he does so on his own risk. The duty is to protect or warn. The doing of either discharges the occupier's duty.

Here the plaintiff plead that the pipelines under pressure were a dangerous condition and that the appellant had the duty to control the pressure in the toluene line on the occasion in question. The jury found that the appellant had the right to control the pressure in the toluene line and failed to release the pressure on the toluene line before the dragline was used to uncover the pipeline and that was negligence and a proximate cause of appellee's injuries. The jury found that appellant failed to inspect the toluene line to determine the amount of pressure therein before the dragline was used and that was negligence, and a proximate cause of the injuries. Since this danger was not open and obvious as a matter of law, and it is undisputed that the appellant did nothing to protect or make the premises reasonably safe for this particular work, then appellant's only defense hinges on whether or not the appellee was warned. Was the general warning sufficient to charge the appellee (or the appellee through his employer) with knowledge and appreciation of the dangerous condition? It was the clear holding of the Supreme Court in Robert E. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W. 2d 391 (1954), in Dee v. Parish, 160 Tex. 171, 327 S.W.2d 449 (1959), in Halepeska, supra, and in the recent decision of the Supreme Court in Ellis v. Moore, Tex., 401 S.W.2d 789 opinion of Court of Civil Appeals, 385 S.W.2d 261, that knowledge is not enough.

"* * * There must be knowledge of the danger involved and the appreciation of the danger. This Court pointed out in Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953), that there must be knowledge and appreciation of the particular danger involved so that the plaintiff proceeds to encounter the risk as the result of an intelligent choice. * * * Where the assumed risk doctrines of 'no duty' or volenti are invoked, the duty of the defendant is to exercise ordinary care to make reasonably safe or to warn. * * * The function of the warning is to give the plaintiff knowledge and an opportunity to appreciate the danger. He then can decide whether to confront the danger. * * *" Ellis v. Moore, supra.

Here the appellant argues that he warned appellee's employer to the effect that the lines were "charged". Even if there was a general warning, we cannot say that this was a warning of the danger as a matter of law, sufficient to charge the appellee with knowledge and appreciation of the risk and danger. In Hall v. Medical Bldg. of Houston, 151 Tex. 425, 251 S.W.2d 497, our Supreme Court held that the basis for liability in the "no duty" case is the superior knowledge of the danger on the part of the occupier. The appellant knew that the lines were under pressure of highly inflammable hydrocarbons. The appellant knew that a dragline was operating in, around and over these lines. The appellant knew that a dragline could puncture one or more of the pipelines (the job superintendent had a similar experience before). The appellant knew further that the appellee was welding with a lighted torch in the immediate proximity while the dragline was operating. Appellant did not say, "you better not use the dragline while the welder is operating with a lighted torch." The appellant did not say that the welder should cease welding while the dragline was operating in the proximity of the pressurized lines. The appellant did not tell the appellee's employer to cease these operations until they could

release the pressure on the pipelines. Appellant did not say that these operations should be conducted with hand tools or other devices. There was no complete disclosure of the danger. We hold that the appellant had a duty to warn, so that the appellee could have had the knowledge and appreciation of the danger involved. This was not done. There were no issues requested or submitted by appellant as to warning, nor did appellant plead that he warned appellee. If appellant wished to escape legal responsibility, by relying upon warning, then the appellant had the responsibility to request an issue as to whether it had warned the appellee. Western Auto Supply Company v. Campbell, 373 S.W.2d 735, (Supreme Court 1963). Since appellant did not request such an issue, then it was waived. Allen v. American National Insurance Company, 380 S.W.2d 604, (Supreme Court 1964); Rule 279, Texas Rules of Civil Procedure.

In Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172 (1951), the plaintiff's knowledge that some of the pipe might be defective (here, that the pipelines were loaded) was much greater than in the instant case, where appellant's superintendent had made only a general statement to the contractor's foreman before appellee's employment to consider the lines loaded. Appellee had no specific knowledge thereof. In Halepeska the Court said that the decision to incur the risk must have been deliberate * * * a result of an intelligent choice. Harvey v. Seale, 362 S.W.2d 310, (Supreme Court 1962). The Court further stated that the duty owed was "* * * a complete disclosure of the danger." The nature of the warning must be such that the invitee is vested with full knowledge of the nature and extent of the danger involved such that, knowing of the particular risk involved, he can make an intelligent choice between retreating from that danger or exposing himself to it. Chickasha Cotton Oil Company v. Holloway, 378 S.W.2d 695, ref. n. r. e. The knowledge and appreciation that our Supreme Court speaks about, is not present here.

■ The appellant argues as one of its points, that there was no evidence of foreseeability to support the negligent or proximate cause issues found against it upon which its duty rested. While appellant was under a duty to exercise ordinary care against dangers of which it knew, or dangers of which it should have known, the appellant contends that there was no evidence to show that it should have, in the exercise of ordinary care, foreseen the danger that caused the injury to appellee Henry. This exact contention was made in Ellis v. Moore, supra. There the defendant pointed out that the three-fork lift used by Harold was in good order. Here appellant contends that the pipe was in good condition. There they complained that the use (or mis-use) of the lift caused the injury. Here the appellant complains that the dragline bucket was dropped and its mis-use caused the injury to Henry. In Ellis they contend that it was not the defective cylinder lift which Harold knew to be defective and which he was using, that caused the injury. In this case appellant contends that it was not the pressure in the toluene line which the appellee Henry knew (or was charged with knowledge through his employer) that caused Henry's injuries. In Ellis the defendants contended that as a matter of law they could not foresee that Harold would attempt to use the three-fork hitch to lift the discs and that even if he did, that he would fail to release the clutch if the front end came off the ground and that the tractor would overturn and injure Harold. In our case defendant contends that it could not foresee that the use of dragline and the operation of the lighted torch would cause an injury even if the dragline bucket was dropped and punctured the pressurized toluene line, and that the toluene would spray and ignite appellee. The Supreme Court in Ellis disagreed and said:

"* * * we cannot say as a matter of law that McCrary (defendant) could

not foresee that if Harold did use the three-point hitch, he might not skillfully apply the clutch and throttle when the tractor's front wheels left the ground."

We cannot say as a matter of law that appellant could not foresee that the dragline might puncture the toluene line under pressure and that flammable hydrocarbons would be ignited by the operation of Henry's welding torch.

The defendant did not plead volenti non fit injuria nor did it request or submit an issue as to whether or not a danger existed to which the appellee voluntarily exposed himself. Volenti non fit injuria is not in this case.

■ Appellant contends that Vickers was an independent contractor and although the relationship of appellant and appellee was that of an owner and occupier of the premises and a business invitee, the appellant owes no duty to the appellee except the exercise of ordinary care to keep the premises safe for the use of persons invited to use the premises for business purposes. Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425 (1950) ; Robert E. McKee General Contractor v. Patterson, supra. Appellant argues in effect that when a business invitee performs a particular job as an independent contractor, he is in effect charged with knowledge of the dangers incident to such work, and that the owner has no duty to warn such invitee with respect to conditions which are as a matter of law, open and obvious, and that he takes the premises as he finds them. Appellant says there is no duty on the part of the owner to protect such invitee even by the use of reasonable precautions to eliminate the hazards. Citing Marshall v. San Jacinto Bldg., Tex.Civ.App., 67 S.W.2d 372, wr. ref.; Harvey v. Seale, 362 S.W.2d 310 (Supreme Court 1962). Appellant pleaded in effect that it owed no duty as a matter of law because the danger and/or condition was so open and obvious that as a matter of law it was not liable for the injuries.

We fail to see the relevancy of appellant's argument under the facts of this case. The danger was not open and obvious as a matter of law.

■ Appellant argues that it retained no control over the work except to see that the work was performed satisfactorily. Appellant argues that the general rule is that the owner-contractee is not liable for injuries sustained by employees of an independent contractor in the performance of the work which has been engaged; that although an exception to the general rule exists where the employer of the contractor retains control over the operative details and the right to direct the manner in which employees of the contractor perform their work, this exception did not apply to the appellant since it did not exercise that degree of control. Citing Allen v. Texas Electric Service Company, 350 S.W.2d 866, Tex.Civ.App., ref. n. r. e. (1961). Although appellee's employer was called an independent contractor he was nonetheless a business invitee. Appellant's superintendent was present at the jobsite and knew and observed the work that was being performed. He had the right to control which machines were to be used (the jury so found) and what work was to be done. If appellant's superintendent observes an employee of an independent contractor attempting to perform a dangerous act it is his nondelegable duty to notify or warn said employee of such danger. Texas Electric Service Co. v. Holt, 249 S.W.2d 662 at 667, Tex.Civ.App. 1952, ref. n. r. e. The mere fact that Vickers was called an independent contractor does not mean that appellant did not retain extensive control as to general and specific results of the work. In any respect the mere fact that appellee's employer was an independent contracter is not determinative under the facts of this case, for if it was a factor, then the Halepeska, Bosworth, Kneten, Smith and Albritton cases and other authorities would not be in point. Halepeska v. Callihan Interests, Inc. (Supreme Court 1963), 371 S.W.2d 368; Continental Paper Bag Co. v. Bosworth (Tex.

Civ.App.1919) 215 S.W. 126; Sun Oil Co. v. Kneten, 5 Cir., 164 F.2d 806; Smith v. Henger, supra; Sunray Oil Corporation v. Albritton, D.C., 88 F.Supp. 54; 5 Cir., 187 F.2d 475, Appellee's employer's contract was upon an equipment rental hourly basis and his employment was determinative at the will of appellant.

Appellant contends in his fourth point that as a matter of law, the negligence of the dragline operator in allowing the dragline bucket to drop from a height of approximately five feet constituted the sole cause of appellee's injuries or that it was a new and independent cause breaking any causal relationship between the pressure in the toluene line and the fire which injured appellee. Appellant argues that the dragline bucket was negligently and carelessly dropped onto the toluene line from approximately five feet in a free fall with the bucket teeth pointing straight down.

■ The question of whether the dragline bucket was dropped or not and from what height, was a hotly disputed fact issue. In fact, appellee contends that the greater weight and preponderance of the testimony was to the effect that the bucket was not dropped. It is not necessary for us to decide this contention of the appellee. Appellant did not request any issue as to whether it would be negligent conduct for a dragline operator to drop the bucket from the height at which it was dropped. If the negligent and careless operation of the dragline was a part of appellant's defense of contributory negligence, as it argues now in this court, then the burden of requesting this issue and the securing of a favorable jury answer thereon, was on the appellant, in view of the conflict in the evidence. Since it was not requested it was waived. Rule 279, T.R.C.P.; Goodwin v. Southtex Land Sales, 243 S.W.2d 721, Tex.Civ.App. 1951, ref. n. r. e.

In any respect this point of appellant is overruled because the jury found that even if the dragline bucket was dropped it was not the sole proximate cause. Appellant's points one through five are overruled.

Appellant's points six through fifteen are briefed together and will be considered together by this court. Appellant contends under these points that the trial court should not have submitted special issues 2 through 8 or should have disregarded them on appellant's motion and the trial court should have submitted appellant's requested special instructions to the effect that one is not required to anticipate negligent conduct and a further instruction on the definition of independent contractor.

■ Appellant argues in effect under these points, that there was no duty to release the pressure in the lines and that there was no evidence that there was a feasible or practical way of completely shutting down the refinery, to drain all of the lines in anticipation of this injury. The evidence showed that the contract was a two phase contract, the second phase of which required that each line be drained and cleaned so that it could be cut, lowered and rewelded into place. The appellant knew which lines were under pressure and which lines were being used, and which lines were not. The evidence showed that the appellant knew that some lines were close to the surface of the ground (four inches), and which lines were deeply embedded in the ground (ten feet). Surely, the lines closer to the surface of the ground or those in the immediate proximity of the operation of the dragline bucket could have been shut down and the pressure released. There was evidence that even on the punctured toluene line when the pressure had been released after the dragline bucket had punctured it, a wooden peg was put in the hole and a piece of metal placed over the hole and it was welded as a patch on all four sides with the line still full of toluene, but not under pressure. There was no explosion or fire. The evidence further showed that the line pressure (atmospheric) could be released by opening a valve at the refinery site, and that the static pressure could be released by the draining of the line at least to a point below where the appellee was

working. We overrule this contention of appellant.

■■■■ Appellant again argues that the improper operation of the dragline caused the injury. There was no direct evidence of the improper operation of the dragline and no requested issue. We agree as appellant argues, that the general rule is that one is not required to anticipate the negligent conduct of another. De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95. However, where the appellant has knowledge of facts which place him on notice that an accident might occur, such as in the instant case, the negligent conduct, if any, of another party does not prevent a finding of negligence on the part of the defendant. We do not believe that such contention on the part of appellant here has merit. We see no error in the failure to instruct the jury on anticipated negligent conduct nor the definition of a contractor, as neither instructions are determinative of this case, or if it was error it was harmless by virtue of the other findings by the jury. Rule 434, T.R.C.P. Appellant's points are overruled.

■■■■ Appellant's sixteenth point contends that the trial court erred in permitting the opinions and conclusions of certain witnesses to be expressed as to whether it was safe or dangerous to use draglines to uncover pipelines carrying hydrocarbon materials. On the other hand, the appellant in its own brief stated that: "All the evidence in the case at bar demonstrated that it was *safe* to use a dragline to remove the overburden from the dock loading lines." Appellant complains that the trial court erred in failing to prohibit certain witnesses from testifying as to whether or not the use of a dragline to remove dirt from the top of the lines would be safe. One of the witnesses testified over objection as to the dangers of the use of draglines where there were existing pipelines carrying flammable hydrocarbons. Appellant on the other hand elicited testimony as follows:

"Q  Assuming that there had only been ten inches of dirt over that pipe, in your opinion, was it safe to remove that dirt with a dragline?

A  I would say that it wouldn't have been too hazardous, down to the point of the top of the pipe.

Q  To use the dragline?

A  To use the dragline, yes, sir.

Q  Assuming, then, that the surface of the dirt was six inches above the top of that line, would it have been safe to use the dragline to remove that dirt?

A  I would say that it wouldn't have been necessary. As far as safety is concerned, whether it would have been safe would hinge a whole lot on the conditions that existed there at the site * * *.

\*      \*      \*      \*      \*      \*

A  * * * I would say six inches would be getting pretty close to the point that if I—if I was the one making the decision to either use the dragline or a hand excavation, I probably would have said, 'Use hand excavation instead of the dragline', as a matter of convenience, and possibly safety."

The statement of facts is quite voluminous covering over one thousand pages. There was a lot of testimony concerning the operation of a dragline. There was considerable evidence concerning dragline operations offered repeatedly by appellee, and received without objection from the appellant. We hold that the overruling of the objections was not error since the evidence was cumulative. In any event since the appellant offered similar evidence from other witnesses concerning the same factual situation its objections will be deemed to be waived. If we be wrong concerning this, it is our opinion that the testimony was not determinative of any ultimate issue in the case as it turned out. We therefore hold that the errors, if any, in the admission of evidence complained of was harmless and

the error complained of was not such as was reasonably calculated to cause or probably did cause the rendition of an improper judgment in this case. Rule 434, T.R. C.P.; Medina Electric Cooperative, Inc. v. Ball, Tex.Civ.App., 368 S.W.2d 227; City of Gladewater v. Dillard, Tex.Civ. App., 312 S.W.2d 530; 1 McCormick & Ray, p. 26, § 27; Sharkey v. Hollums, Tex. Civ.App., 400 S.W.2d 353 (1966).

■ In appellant's points seventeenth through twentieth, appellant argues that the trial court erred in excluding evidence from the jury as to certain alleged indemnity provisions in the rate schedule of appellant's standard general contract from Vickers (appellee's employer) to appellant. The contract between Vickers and appellant was oral. Vickers testified that prior to the commencement of the work on the job he was not shown the printed general conditions. After the accident had happened, Vickers did sign the purchase order containing the written indemnity agreement offered by the appellant. The rate schedule was introduced into evidence but the trial court physically cut out a clause in the contract before permitting it to go before the jury. This clause stated:

> "It is understood that all work done by us (appellee's employer) for your (appellant's) account is that of an independent contractor, and you are not liable for any of our acts of commission or omission resulting in injuries or damages."

It is appellant's argument that this clause should be admitted and considered by the jury so that (1) they would realize that Vickers was clearly an independent contractor, and (2) that it was intended by appellant and Vickers, that Vickers would be responsible for all acts, whether negligent or not, and that appellant would not be responsible therefor. We have already discussed the independent contractual relationship. If appellant was attempting to cast legal responsibility on appellee's employer by virtue of this contract, then this would be a law point or an action which

was not pleaded by appellant, and it is not properly before us. Appellant does not refer us to any case where this type of evidence would be admissible for the purpose intended by the appellant. Appellant's point is overruled.

■ Appellant next contends that the trial court erred in overruling its objections to the testimony of a certain witness concerning the details of a particular construction job done for the United States Navy where a new aviation gasoline line was joined to an existing line. We have carefully considered all of the testimony of this witness, the objections and the cross examination by the appellant. The witness was qualified as an expert and the testimony complained of was elicited in minute detail by appellant on cross examination. Any harm committed in permitting such testimony to go to the jury was cured by the elaboration on cross examination. We deem it harmless error, if any. Rule 434, T.R.C.P.; Hughes v. State of Texas, Tex. Civ.App., 302 S.W.2d 747, 1958 and cases therein cited.

■ Appellant's last two points twenty-two and twenty-three, concern the damages awarded by the jury as being grossly excessive so as to demonstrate bias, prejudice and sympathy on the part of the jury; that the damages were so large that a remittitur should be required and that the verdict shows a complete disregard for the evidence. The appellee testified that he was welding with his hood down and noticed a foreign fire in the hole where he was working. He raised his welding hood and found that he was completely surrounded by a wall of flames. On extricating himself from the ditch his entire clothing was afire, save and except his boots. Most of his clothing was burned off. He stood for fifteen minutes being unable to sit down, while waiting on an ambulance. He was severely burned over eighty-five per cent of his body front and back with second and third degree burns. His entire face was covered with first degree burns with some resulting scarring. His ear was burned

deeply. When he was first brought to the hospital he was in profound shock and near death. His left arm and leg were burned very deeply involving the muscle and underlying tissue, leaving a loss of motion in his left elbow and his left hand and permanent injury to his left leg. Other parts of his body were burned to such a degree that there will be no regeneration of muscle and tissue. He was operated on twenty-one or twenty-two times. His treating physician testified that he was totally disabled and is permanently disabled from doing any active work that requires him to be out of doors. He remained in the hospital for three months, much of the time in severe pain which was not controlled by drugs because of possibility of addiction. After he was sent home in December, 1960, his treatment continued for a long time and involved extended physical therapy. His pain continued until and including the date of the trial (1964). It was stipulated that his medical expenses for the treatment of his injuries amounted to $19,806.52. Appellee's earnings prior to the accident were approximately $5,000.00 per year. One of the doctors testified that he will need future surgery to his left leg which was severely burned, including involvement of the underlying tissue. This leg had been bothering him up to the time of trial because of pain and swelling. Appellee was thirty-nine years of age at the time of the accident with a life expectancy of approximately thirty years. The jury awarded appellee $85,000.00 for past and present physical pain, mental suffering and loss of earning capacity, and $500.00 for future medical expenses. We hold that there was sufficient evidence to support the findings of the trial jury and we do not think that the verdict is excessive in view of the age and life expectancy of the appellee, the disability and the severity of the injuries he has suffered. Summers Road Boring, Inc. v. Thompson, 393 S.W.2d 690 (1965, Tex.Civ. App. ref. n.r.e.) and cases cited therein.

The judgment of the trial court is affirmed.